UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ISA MARTIN,

                          Plaintiff,

           -against-

CITY OF NEW YORK, ANTONIA GIORDANO,
Individually, PHILIP VACCARINO, Individually,
DANIEL KEATING, Individually, MICHAEL ALFIERI,
Individually, and BRUCE CEPARANO, Individually,

                         Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES UNDER FED. R. CIV. P. 54(D)(2); 11(C); 16(F) AND UNDER 42 U.S.C. § 1988 AND 28 U.S.C. § 1927**

11 CV 4507 (ARR) (JO)

Pursuant to 42 U.S.C. § 1988; 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 54(d)(2), 11(c)(3), and 16(f), and upon the supporting Declaration of Andrew Lucas, defendants City of New York, Antonia Giordano, Philip Vaccarino, Daniel Keating, Michael Alfieri and Bruce Ceparano (collectively, "Defendants"), hereby move for sanctions and attorneys' fees.

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on September 16, 2011, naming the City of New York and Officer Antonia Giordano and asserting fifteen claims under state and federal law for, *inter alia* (1) excessive force; (2) deliberate indifference to medical needs; (3) equal protection violations; (4) failure to intervene; (5) supervisory liability; (6) municipal liability; (7) assault; (8) battery; (9) intentional infliction of emotional distress; (10) negligent screening, hiring and retention; (11) negligent training and supervision; (12) negligence; and violation of the state constitution. Defendants answered on March 13, 2012.

1

On April 10, 2012, Magistrate Judge Orenstein held an initial conference and issued a scheduling order with a fact discovery deadline of October 3, 2012 and expert discovery by January 8, 2013. The Court set a settlement conference for January 22, 2013.

After settlement discussions between the parties Defendants offered a Rule 68 Offer of Judgment in the amount of Ten Thousand and One dollars ($10,001) on May 22, 2012. The offer was served by first class mail and expired on June 8, 2012. Plaintiff did not accept that offer.

On June 15, 2012, plaintiff filed his Amended Complaint, adding Police Officers Phillip Vaccarino, Michael Alfieri, Daniel Keating, and Sergeant Bruce Ceparano as defendants.

The parties engaged in fact and expert discovery following the Initial Conference. This included the documents generated by plaintiff's treatment at Richmond University Hospital immediately after this incident. Those documents were provided in response to plaintiff's document requests on or about June 8, 2012. The medical documents detailed statements by plaintiff that deeply undermined his claims such as "I jumped off a fence and broke my Ankle." Lucas Ex. A, p. D186. "left ankle pain s/p falling while running from the police pt states that he drank a lot today." Lucas Ex. A, p. D193. And "ISA MARTIN is a 27 –year-old Male under NYPD custody who reports injury of the left ankle while he was running from the police, climbed a 2 foot fence and fell onto the ankle." Lucas Ex. A, p. D202.

The Ambulance Call Report, Lucas Ex. A, p. D186 also indicates that plaintiff was on oxycodone at the time of this incident. Lucas Ex. A, p. D186. Notwithstanding plaintiff testified under oath, that he was not abusing oxycontin, or any prescription drugs prior to this incident, nor had he ever tried them prior to this incident. Lucas Ex. B, p. 38:11-39:10, 160: 10-17.

Plaintiff even testified that he subsequently became hooked on oxycontin as a result of this incident. Lucas Ex. B, p. 38:11-39:10.

Discovery included the depositions of plaintiff, five defendants, Ms. Asanovska and Ms. Melville, and the retention of expert witnesses by both sides. Following three requests for discovery extensions discovery closed on May 9, 2013. At the close of discovery the parties appeared before Judge Orenstein on June 12, 2013 after submitting ex-parte settlement memoranda. The case did not settle at that time.

On June 11, 2013, defendants submitted a pre-motion letter for a summary judgment motion alongside a Loc. Civ. R. 56.1 statement of material facts. Plaintiff filed his response, and voluntarily withdrew several claims, on July 12, 2013. The court ruled on outstanding issues after a hearing held August 22, 2013, by a written order dated September 9, 2013.

The parties each sought to provide fuller briefing and requested the same by letter dated October 17, 2013. Subsequently, after a hearing set for October 29, 2014 the court reinstated plaintiff's deliberate indifference claim.

The Court held a pre-trial scheduling conference on January 23, 2015. Plaintiff requested a trial date in March of 2016, after plaintiff was scheduled to be released from state custody. On January 23, 2015, the Court ordered trial to commence on March 21, 2016.

Over one year later, on January 27, 2016, the case was reassigned from the Honorable Sandra L. Townes to the Honorable Allyne R. Ross. The Court held a telephonic status conference on February 4, 2016 where the Court ordered pretrial submissions due February 22, 2016. At the request of plaintiff's counsel, Jason Leventhal, the Court moved the trial date to March 14, 2016.

On February 19, 2016, Amanda Shoffel filed a notice of appearance on behalf of the defendants.

On February 19, 2016, John Nonnenmacher also appeared and filed a request for a 1 week extension of time to complete the pre-trial submissions citing a death in the family. On February 19, 2016, the Court granted an extension until February 23, 2016, noting "no further extensions will be granted and the trial date will not be postponed."

On February 22, 2016 defendants filed a letter stating that they were unable to substantively complete the joint or responsive portions of the pre-trial submissions including the joint pre-trial order or response to the motions *in limine* as Mr. Nonnenmacher was unavailable, and Mr. Leventhal indicated that he was not trial counsel.

On February 23, 2016 the Court moved the trial date to March 21, 2016, and ordered pre-trial submissions by February 26, 2016.

On February 23, 2016, the same day, Mr. Nonnenmacher filed a request for additional time to submit the pre-trial submissions. The Court granted an extension until 10:00 a.m. on February 29, 2016.

Plaintiff provided his portions of the pre-trial submissions over the weekend and up to the hour before the 10:00 a.m. February 29, 2016 deadline. That morning defendants submitted a letter explaining that they were unable to submit, inter alia, the joint jury charge, joint pre-trial order, and reply to the motions *in limine*.

The Court held a phone conference at 3:00 p.m. on February 29, 2016, where the Court stressed the importance of the pre-trial submissions to the parties, and highlighted some of the difficulties to that point. The Court ordered all pre-trial submissions due by March 2, 2016.

4

On March 2, 2016, the parties submitted their pre-trial submissions. On March 3, 2016, the Court scheduled a pre-trial conference to rule on the motions in limine and proposed exhibits for March 7, 2016. The Court also informed plaintiff that he had failed to provide courtesy copies of his exhibits as ordered, directed they be provided immediately, and directed Mr. Nonnenmacher to update the Court with a working phone number.

On March 4, 2016 the Court held a telephonic conference regarding the plaintiff's noncompliance with court orders and issues surrounding the parties' pre-trial submissions. On March 9, 2016, the Court held a pre-trial conference dealing with, inter alia, the motions *in limine* and the objections to the parties' exhibits.

On March 16, 2016, the Court issued an order regarding the proposed exhibit lists and exhibit binders stating in relevant part "The court reminds plaintiff's counsel that it has issued multiple orders (including on 3/3/16, 3/4/16, and 3/9/16) and held multiple conferences (including on 3/9/16 and 3/15/16) regarding persistent issues with plaintiff's exhibits. The Court will not tolerate any further delays or noncompliance with its orders and instructions. If plaintiff does not bring its materials into full compliance with the court's orders and instructions by noon tomorrow, the court will assess sanctions."

Subsequently, on March 21, 2016, several hours before jury selection was set to begin, plaintiff's counsel John Nonnenmacher, through Jason Leventhal, filed a request to adjourn the trial due to the death of Mr. Nonnenmacher's mother. The Court granted an adjournment until March 28, 2016. The Court was clear that regardless of Mr. Nonnenmacher's availability trial had to begin on March 28, 2016 stating "If Mr. Nonnenmacher – who first appeared as an

5

attorney for plaintiff three weeks ago – is unable to proceed on that date, the court nonetheless expects trial to go forward with plaintiff's other attorneys of record."

Over the ensuing week defendants' counsel continued to prepare for trial. On March 23, 2016, Mr. Leventhal requested an urgent hearing. On March 24, 2016, the Court held a conference "concerning recent revelations of misrepresentations to the court concerning the death of Mr. Nonnenmacher's mother and relatedly, Mr. Nonnenmacher's availability for trial."

The Court described that Mr. Leventhal had hired a private investigator who confirmed his worst fears about Mr. Nonnenmacher. The Court noted that Mr. Nonnenmacher had not apprised the Court of any error on the docket concerning his mother, and that he had asked for previous significant extensions of trial related deadlines. Lucas Ex. C, p. 5.

The Court also noted that "the court has been unfairly inconvenienced by the conduct of plaintiff's counsel over the past several weeks. No doubt the [defendants have] been much more inconvenienced and prejudiced by their conduct. Plaintiff's counsel's conduct… has included blatant disregard and repeated violation of court-ordered deadlines. It has prompted this court on multiple occasions, and in both written and oral orders, to threaten sanctions against plaintiffs' counsel." Lucas Ex. C, p. 6. The Court went on to detail some of the various parties who suffered as a result of this conduct including the jurors, the Court, the medical professionals and other witnesses, the parties themselves, as well as the other arms of the Court system who had scarce resources unavailable. Lucas Ex C, p. 7.

The Court stressed that Mr. Leventhal must be prepared to go forward with trial on Monday, March 28, 2016. In response he indicated that despite the clear order of the Court on March 21, 2016, and his concerns regarding his co-counsel, Mr. Leventhal had not begun

6

preparing the case for trial. Lucas Ex. C, p. 10-12. The Court stated on the docket that "failure to appear and prosecute plaintiff's claims on [March 28, 2016] will result in dismissal under Rule 41(b) of the Federal Rules of Civil Procedure."

Subsequently plaintiff's counsel reached out to defendants on Friday, March 25, 2016 to request certain discovery documents and to raise settlement. On Saturday, March 26, 2016, plaintiff filed a letter voluntarily withdrawing his claims with prejudice. No rationale was given on the record for this decision. The Court so ordered the dismissal on March 29, 2016, noting that it retains jurisdiction to adjudicate sanctions motions.

For the reasons set forth herein, defendants now move for sanctions against Mr. Nonnenmacher, Plaintiff Isa Martin, and Mr. Leventhal, and alternatively request an evidentiary hearing to clarify factual issues surrounding sanctions related to Mr. Martin and Leventhal pursuant to *inter alia,* Fed. R. Civ. P. 54(d)(2); 16(f); 28 U.S.C. § 1927 and/or 11(c)(3).

## POINT I

### SANCTIONS ARE WARRANTED AGAINST MR. NONNENMACHER FOR MISREPRESENTING HIS MOTHER'S DEATH TO DELAY TRIAL ON MARCH 21, 2016.

Mr. Nonnenmacher, through his co-counsel, falsely represented to the Court that his mother had suddenly died in order to delay the start of trial. Mr. Nonnenmacher's conduct warrants sanctions as authorized by the Court's inherent authority; 28 U.S.C. § 1927; and Rule 11.

28 U.S.C. § 1927 states that an attorney who "unreasonably and vexatiously" multiplies proceedings "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Id.

7

"An award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991). "Bad faith is the touchstone of an award under" § 1927.[1] Id. Similarly, when assessing sanctions under a court's inherent power, courts consider whether a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id, (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)). "[T]here is no question that it is bad faith to egregiously mislead a Court." Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc., No. 03 Civ. 9623 (JFK), 2005 U.S. Dist. LEXIS 17977, at *15 (S.D.N.Y. Aug. 23, 2005); see also Murray v. Warden, No. 01-CV-255 (GLS), 2002 U.S. Dist. LEXIS 23351, at *39-40 (N.D.N.Y. Dec. 5, 2002) ("the court has the inherent power to sanction those who seek to deceive the court with false representations"). It is equally evident that an attorney who makes false statements to the court necessarily "undermine[s] the integrity of a federal court proceeding." Luscier v. Risinger Bros. Transfer, No. 13-CV-8553 (PKC), 2015 U.S. Dist. LEXIS 129640, at *27 (S.D.N.Y. Sept. 17, 2015) (imposing sanctions pursuant to Fed. R. Civ. P. 56(h) against an attorney who submitted an affidavit containing false statements); accord Rankin v. City of Niagara Falls, 293 F.R.D. 375, 382 (W.D.N.Y. Apr. 11, 2013) ("Courts must be able to rely upon candor from attorneys to keep dockets in good order for the sake of parties, other attorneys, the public, and the administration of justice."). In keeping with these considerations, it is appropriate to sanction an attorney who makes misrepresentations to the court in an effort to gain an

---

[1] Even assuming, *arguendo*, that one could find the absence of bad faith, defendants maintain that sanctions are nonetheless warranted pursuant to Fed. R. Civ. P. 16(f). Mercado v. Choyang Med. Co., No. No. 07-CV-3563 (NG) (VPP), 2014 U.S. Dist. LEXIS 91071, at *10 (E.D.N.Y. Jul. 2, 2014) ("In deciding whether a sanction is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction").

extension of a looming but unwelcome deadline. Rankin, 293 F.R.D. at 379 (finding bad faith and issuing monetary sanctions totaling $3,000 against counsel pursuant to Fed. R. Civ. P. 11 and § 1927 after counsel made misrepresentations on three occasions to obtain extensions of a summary judgment briefing schedule), aff'd by Rankin v. City of Niagara Falls, 2014 U.S. App. LEXIS 10903 (2d Cir., June 12, 2014).

Distinct from other costs that a moving party may be entitled to, monetary sanctions are appropriate for such conduct. Id, at 395 ("the total monetary sanctions are comprised of $500 for [C.A.'s] December 5, 2011 misleading representations, $1,000 for her January 4, 2012 misleading representations, and $1,500 for her February 23, 2012 misleading representations"); Luscier, 2015 U.S. Dist. LEXIS 129640, at *40 (sanctioning plaintiff's attorney $5,000 for an affidavit containing misrepresentations; and $9,000, jointly and severally against the attorney and his firm, for a second false affidavit).

In this case, plaintiff and his lawyers tried to keep the prospect of trial on the horizon as long as possible while simultaneously going to desperate lengths to avoid actually presenting a case. Plaintiff's eventual last minute voluntarily dismissal of all of his claims against all defendants makes this tactic all the more troubling, because it supports an inference that plaintiff's attorneys intentionally avoided personal responsibility for presenting their client at trial because they either knew or should have known that his case lacked merit and/or could not be presented with truthful testimony. Defendants cannot speculate as to the source of his personal motivation, but the record demonstrates that Mr. Nonnenmacher sought to delay trial on multiple occasions. On February 19, 2016, Mr. Nonnenmacher sought an extension of the deadline for filing the joint pretrial order based upon his representation that he "was informed early this morning that a close family member passed away during the night." (Docket Entry No.

51.) On February 23, 2016, Mr. Nonnenmacher asked for an additional extension, again citing the reported death of his uncle. (Docket Entry No. 54.) As reflected on the civil docket, plaintiff repeatedly failed to timely submit his proposed trial exhibits to the Court. (See Docket Entries dated March 3, 2016, and March 4, 2016.) Mr. Nonnenmacher first appeared in Court in this matter at the parties' March 9, 2016 pretrial conference. During the March 9, 2016 conference, Mr. Nonnenmacher acknowledged that he had not adequately prepared as previously directed by the Court, including by not reviewing the proposed jury charge, thereby further delaying the resolution of several outstanding pretrial issues. Of course, Mr. Nonnenmacher's actions reached a troubling peak when, through Mr. Leventhal, Mr. Nonnenmacher misrepresented his mother's death in a last-ditch effort to adjourn trial mere hours before it commenced. (See Docket Entries 102, 111, and 112.) Given plaintiff's counsel's history of dilatory conduct, as well as the morbid misrepresentation which came to light, it is impossible to view his adjournment of trial on March 21, 2016 as motivated by anything other than a desire to delay the proceedings. Given the egregiousness of the lie that he relied upon to achieve his desired delay, it is difficult to fathom any other conclusion than that Mr. Nonnemacher acted in bad faith.

    In addition to imposing upon the Court and impairing the integrity of the proceedings, Mr. Nonnenmacher's conduct unfairly burdened defendants and defense counsel. The parties and counsel were scheduled to appear for trial at 9:30 am on March 21, 2016. At approximately 8:32 a.m., Mr. Leventhal filed a letter on ECF informing the Court "that earlier this morning plaintiff's lead trial counsel's mother, Carol Nonnenmacher, passed away in her home in Staten Island" and requesting a continuance of at least two weeks. (Docket Entry No. 102). Shortly thereafter, defendants and their counsel appeared as scheduled, ready to begin trial.

In Court, Mr. Leventhal repeated his representation that Mr. Nonnenmacher's mother had passed away and emphasized that one could assume that considerable time would be needed to accommodate Mr. Nonnenmacher's grieving process. Defendants requested that trial commence within the week, notwithstanding Mr. Nonnenmacher's potential unavailability. Mr. Leventhal, however, in the company of plaintiff, stressed to the Court that he did not consider himself plaintiff's trial counsel, and that for him to personally present plaintiff's case at trial was against his client's wishes. The Court granted plaintiff a one-week continuance and adjourned the trial until March 28, 2016. The Court expressly ordered that "[i]f Mr. Nonnenmacher - who first appeared as an attorney for plaintiff three weeks ago - is unable to proceed on that date, the court nonetheless expects trial to go forward with plaintiff's other attorneys of record." (Docket Entry, dated March 21, 2016.)

The five individual defendants are all active members of the New York City Police Department tasked with important obligations on a daily basis. Sergeant Alfieri, Sergeant Giordano, and Lieutenant Ceparano, as supervisors, carry additional responsibility for other members of the department. By way of example, Sergeant Alfieri supervises the domestic violence desk for the entire Sixth Precinct. Trial in this matter has diverted defendants' time from their crucial responsibilities as public servants. Freeing defendants' time for trial during the week of March 21, 2016 required both departmental staffing and personal scheduling accommodations. Unfortunately, due to plaintiff's conduct, their appearance in Court on the morning of March 21, 2016 was, in the end, a complete waste of their time. In addition, once the trial was adjourned until March 28, 2016, defendants and defense counsel, naturally, continued to spend time preparing their trial presentation, working up until the Saturday afternoon before

trial when Mr. Leventhal informed defendants that plaintiff, at the 25th hour, had agreed to withdraw his baseless claims.

Appearing in Court on March 21, 2016, and continuing to prepare for trial throughout the ensuing week required significant resources dedicated to an ultimately unnecessary purpose. The reason that this span of time was ultimately wasted is directly linked to Mr. Nonnenmacher's misrepresentation and last minute adjournment of trial. Mr. Nonnenmacher's conduct - making a serious misrepresentation to the Court and the parties in an unseemly attempt to delay trial - is egregious. It is made more troubling by the fact that delaying resolution of this matter has been a marked characteristic of Mr. Nonnenmacher's relatively brief presence in this case. Therefore, in addition to the other relief sought herein, defendants respectfully request that the Court issue sanctions against Mr. Nonnenmacher for $5,000, or an alternate amount that the Court deems fit.

## POINT II

### SANCTIONS ARE WARRANTED AGAINST PLAINTIFF AND MR. LEVENTHAL JOINTLY, OR ALTERNATIVELY THE COURT SHOULD HOLD AN EVIDENTIARY HEARING RELATED TO THE APPORTIONMENT OF SANCTIONS

As explained *supra*, under section 1927, a court may require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A court also "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32 (1991)). The court is also empowered to act under the Federal Rules of Civil Procedure listed above, Fed. R. Civ. P. 54(d)(2); 11(c)(3); 16(f), as well as under the Court's inherent power.

To impose these sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)).

A claim entirely without color "lacks any legal or factual basis." Sierra Club v. United States Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985) (citing Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980)). A colorable claim, however, "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Nemeroff, 620 F.2d at 348. To establish bad faith, sanctions under section 1927 and a court's inherent authority require a similar showing — "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Schlaifer Nance, 194 F.3d at 336 (quoting Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir.1996) (quotations omitted)). Moreover, "[t]he court's factual findings of bad faith must be characterized by 'a high degree of specificity.'" Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34 (2d Cir. 1995) (quoting Oliveri v. Thompson, 803 F.2d 1266, 1272 (2d Cir. 1986) (quotations omitted)).

Here, the record is unclear as to 1) whether plaintiff's claim was brought in bad faith from the outset of the case; and 2) how and when the misinformation about the death of Mr. Nonnemacher's mother was conveyed to defendants and the Court. Accordingly, defendants are unable to fully assert the serious allegation of bad faith against Mr. Leventhal as opposed to an improper purpose such as delay, without an evidentiary hearing. See Chambers v. NASCO, 501 U.S. 32, 40, 50 (1991) (approving sanction of attorneys' fees on trial court's inherent power, but

only "after full briefing and a hearing," and holding that, "as long as Chambers received an appropriate hearing, he may be sanctioned for abuses of process beyond the courtroom."); Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, fn. 13 (1980) (holding that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record."); Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96-97 (2d Cir. 1997) ("a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter").

First, two days before the final trial date of March 28, 2016 set by the Court, counsel voluntarily withdrew the case. Mr. Leventhal stated that an issue was discovered in preparing Mr. Martin for trial that prevented him from moving forward with his client's claims. However, this case had been pending for nearly six years and prepared for trial on at least two prior occasions. It is difficult to reconcile the discovery of such new and crucial information with the amount of time and preparation put into this case over many years and multiple trial dates. It is also completely unclear what the new information was that was dispositive of Mr. Martin's claims.

Second, it is completely unclear from the record how the defendants and the Court were misinformed- two hours before jury selection was slated to begin- that Mr. Nonnemacher's mother had passed. It is unclear whether this information came from Mr. Leventhal or if it was conveyed to him by a third party, and if so, if that party was Mr. Nonnemacher. It is unclear why Mr. Nonnemacher, who is counsel of record and receives electronic case filings, did not correct this misinformation when the Court entered its condolences on the record and delayed trial for another week. Mr. Leventhal indicated at the conference on March 28, 2016 that he had some

14

contact with either Mr. Nonnemacher or his wife during the previous week, and it bears fleshing out the extent of this contact prior to assessing responsibility, to the extent the Court does not impose a blanket sanction.

Moreover, the bad faith and sanctionable conduct is in no way limited to counsel in this action. Plaintiff should also be subject to sanctions and liablity for attorneys' fees. First, numerous courts, including the Supreme Court, have recognized that prevailing defendants in civil rights actions are entitled to recover attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 131 S.Ct. 2205, 2213 (2011) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (in turn quoting United States Steel Corp. v. United States, 519 F.2d 359, 363 (1st Cir. 1975))). See also Davidson v. Parshall, 740 F.2d 129, 132-33 (2d Cir. 1984) (quoting *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980)) (stating principle that defendants are entitled to attorney's fees when the action "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."); Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir. 1976) (upholding fee award where litigation was found to be "unreasonable, frivolous, meritless or vexatious."). In General Camera Corp. v. Urban Development Corp., the Second Circuit upheld an award of fees to the State of New York as defendant in an action that the trial court found to have been "entirely groundless." 734 F.2d 468 (1984) (per curiam) (finding award of fees "was proper, even though the district court made no finding on whether [plaintiff] brought [the] action in bad faith."). In Davidson, the trial court had denied an award of attorney's fees where there was no evidence that plaintiff acted in bad faith. The Court of Appeals reversed that denial, finding that subjective bad faith is separate from the question of whether litigation was "frivolous, unreasonable or groundless," and that, while bad faith might provide a "stronger basis," it is not

15

necessary for granting a request for fees. See Davidson, 740 F.2d at 133 (quoting *Christiansburg*, 434 U.S. at 421-22). See also Carrion v. City of New York, No. 01 Civ. 2255 (NT), 2003 U.S. Dist. LEXIS 19909, at *3-8 (S.D.N.Y. 2003) (granting defendant's attorney's fees on what proved to be "nothing more than frivolous case[,]" after "disturbing factors . . . came to light at trial."); Delancett v. Village of Saranac Lake, 986 F. Supp. 126, 128-30 (S.D.N.Y. 1997) (Scullin, J.) (awarding fees to defendants where plaintiff "failed to produce one scintilla of evidence which could color a § 1983 claim" against them); Puglisi v. Underhill Park Taxpayer Assoc., 964 F. Supp. 811, 814-817 (S.D.N.Y. 1997) (Baker-Motley, J.) (awarding attorney's fees to defendants because "plaintiff's claims were meritless from the beginning."); Baasch v. Reyer, 846 F. Supp. 9, 10-11 (E.D.N.Y. 1994) (Wexler, J.) (awarding defendants' attorney's fees where "litigation was frivolous from the outset."); Kappenberger v. Oates, 663 F. Supp. 991, 992-93 (S.D.N.Y. 1987) (Cooper, J.) (experiencing "no difficulty whatsoever in finding plaintiff's entire claim was frivolous within the meaning of § 1988" following an eight day jury trial in which plaintiff repeatedly contradicted his previous statements); Kane v. City of New York, 468 F. Supp. 586, 591-92 (S.D.N.Y. 1979) (Weinfeld, J.) (awarding defendant's attorney's fees where plaintiff pursued vexatious and frivolous litigation).

As discussed above, it was only after five and a half years of actively litigating this action that plaintiff voluntarily withdrew this case. This happened after the trial date was long extended to accommodate plaintiff's scheduled release from custody. This happened after the trial date was moved three times to accommodate counsel's increasingly last minute and spurious requests. The parties went through full discovery including eight depositions, and expert discovery. Numerous subpoenas were issued to compel the appearance of non-party medical experts, and

the Court ultimately had to clear the week of March 14, 2016, March 21, 2016, and March 28, 2016, even setting aside the numerous pre-trial submissions that required attention.

Again, it is unclear what purportedly new information or discovery could have been discovered by counsel or disclosed by plaintiff for the first time on the Friday before the trial was set to begin for the third time, and more than half a decade after the case was filed. As set forth above, that information clearly should have been discovered, disclosed, and at a minimum taken into consideration in the years leading up to trial, as it was apparently fully dispositive of the issues in this case. Notwithstanding defendants are presently unaware of what new information counsel learned, nor why he did not obtain that information from his client until the eve of trial. Defendants, again, will not speculate as to what this fact is, however, given the significant factual contradictions on the record, including the irreconcilable contradictions set forth by plaintiff under oath, defendants request that plaintiff be sanctioned under Fed. R. Civ. P. 54(d)(2); 11(c)(3); 16(f); and/or 28 U.S.C. § 1927 as well. *See* Lucas Decl., Ex A, B.

As detailed in the supporting Declaration of Andrew Lucas, defendants, by four attorneys, expended a total of 713.74 hours on this case. *See* Lucas Decl. at ¶¶ 29-30 and Exhibit D thereto. Defendants note however, that reducing the hours expended to include only time spent preparing for trial from February on, the total hours expended is 356.5. Counting only time spent preparing for trial during the week preceeding the trial date adjourned by plaintiff under false pretenses, from March 14, 2016 until the close of the trial, defendants expended 234.25 hours preparing this case.

As further discussed in the supporting declaration, the attorneys who worked on the case vary in seniority and experience. The principal attorneys at trial, Andrew Lucas, Amanda Shoffel and Melanie Speight, have been practicing for seven, six, and five years, respectively.

17

See Lucas. Decl. at ¶ 29. The supervising attorney, Brian Francolla, has been practicing for nine years. See Lucas. Decl. at ¶ 29. This includes over seventy trials and over fifty federal cases tried to verdict. See Lucas. Decl. at ¶ 29. Attorneys with far less experience than the attorneys on this case have been awarded $350 per hour and more in this District pursuant to 42 U.S.C. § 1988. See Lucas Decl. at ¶¶ 31-36. Given these historic awards, the Office of Corporation Counsel asserts that a blended rate of $350 per hour for the work performed by its attorneys is more than reasonable and, if anything, undervalues the professionalism and skill that the attorneys of the New York City Law Department bring to their representation of the City and its employees. Accordingly, defendants request reimbursement in the amount of $ 81,987.50 in professional fees incurred while defending this baseless and frivolous lawsuit from the week prior to the March 21, 2016 trial date, until the case was ultimately withdrawn by plaintiff. Alternatively defendants request a blanket sanction against plaintiff and counsel jointly in the amount of $65,000, or a number to be calculated by the Court.[2] To the extent the Court defers any blanket sanction and believes it requires additional information regarding the specific facts and misconduct that led to the belated withdrawal of this case, defendants request an evidentiary hearing to obtain the presently undisclosed information about what late discovery made plaintiff's case meritless and required withdrawal.

---

[2] Defendants are in process of submitting to the judgment clerk a separate application for costs pursuant to Fed. R. Civ. P. 54(d)(1).

April 5, 2016  
New York, New York

**ZACHARY CARTER**  
CORPORATION COUNSEL OF THE CITY OF NEW YORK  
*Attorney for Defendants*  
100 Church Street  
New York, New York 10007  
(212) 356-2373

By: /s/_____  
Andrew Lucas  
*Senior Counsel*  
Special Federal Litigation Division

cc: Jason Leventhal, Esq.  
John Nonnenmacher, Esq.  
*Attorneys for Plaintiff*