UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ISA MARTIN,

                            Plaintiff,

                -against-

CITY OF NEW YORK, ANTONIA GIORDANO,
Individually, PHILIP VACCARINO, Individually,
DANIEL KEATING, Individually, MICHAEL ALFIERI,
Individually, and BRUCE CEPARANO, Individually,

                        Defendants.

------------------------------------------------------------------------ x

**DECLARATION OF ANDREW LUCAS IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS**

11 CV 4507 (ARR) (JO)

I, **ANDREW LUCAS**, declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury:

1.      I am a Senior Counsel in the New York City Law Department's Special Federal Litigation Division.  I have been employed by the Law Department in this division since October 2011.  In my present position I have worked on over 100 civil rights cases in defense of the City of New York, and have been lead counsel in all but a handful of those cases.

2.      The Special Federal Litigation Division of the New York City Law Department represents the City of New York in civil rights actions brought in federal court under 42 U.S.C. § 1983.  Specifically, the Division primarily handles cases involving members of the New York City Police Department and the New York City Department of Correction.   Pursuant to N.Y. Gen. Mun. L. § 50-k, the Law Department, and the Special Federal Litigation Division in particular, also represents individual police officers who are sued in federal court for actions taken in the course of their law enforcement duties.

1

3.      I was the primary attorney assigned to represent the City of New York and the five defendants in <u>Martin v. City of New York, et al.</u>, No. 11 Civ. 4507 (ARR).   I was assigned the case in January of 2012.

4.      Annexed hereto as **Exhibit "A,"** offered partially redacted for privacy, is a copy of several of the pages of medical exhibits exchanged in this action.   As set forth in the memorandum of law these documents were provided in response to plaintiff's document requests on or about June 8, 2012.   The medical documents detailed statements by plaintiff that deeply undermined his claims such as "I jumped off a fence and broke my Ankle."  Lucas Ex. A, p. D186.   "left ankle pain s/p falling while running from the police pt states that he drank a lot today."   Lucas Ex. A, p. D193.   And "ISA MARTIN is a 27 –year-old Male under NYPD custody who reports injury of the left ankle while he was running from the police, climbed a 2 foot fence and fell onto the ankle."  Lucas Ex. A, p. D202.   The Ambulance Call Report, Lucas Ex. A, p. D186 also indicates that plaintiff was on oxycodone at the time of this incident.   Lucas Ex. A, p. D186.

5.      Annexed hereto as **Exhibit "B,"** offered partially redacted for privacy, is a portion of plaintiff's deposition transcript.   Notwithstanding the medical records to the contrary, plaintiff testified under oath that he was not abusing oxycontin, or any prescription drugs prior to this incident.  Lucas Ex. B, p. 38:11-39:10.   Plaintiff even testified that he subsequently became hooked on oxycontin as a result of this incident.  Lucas Ex. B, p. 38:11-39:10.

6.      Plaintiff testified:

Q:  As a result of the June 20, 2010 incident, did you become hooked on OxyContin?

A:  Yes.

Q:  Were you using Oxycontin before then?

A:  No.

Q:  Were you using any illegal drugs before then?

A:  Yes.

Q:  Which?

A:  Marijuana.

Q:  Other than marijuana, were you using any other illegal drugs before the June 20, 2010 incident?

A:  No.

Lucas Decl., Ex B p. 38: 14-25.

Subsequently defendants clarified the record:

Q:  You understand that when I say "illegal drugs," I am including prescription drugs not used for their on label purpose?

A:  Yes, I understand.

Lucas Decl., Ex B p. 39: 7-10.

Defendants subsequently clarified again, asking:

Q:  Had you ever been prescribed oxycodone before this [June 20, 2010 incident and hospitalization]?

A:  No.

Q:  Had you ever used it?

A:  No.

Q: Had you ever used any morphine, heroin or any other opiate before this?

A:  No.

Lucas Decl., Ex B p. 160: 10-17.

7.      This testimony was offered notwithstanding the unassailable documentary evidence that plaintiff was already on Oxycodone at the time of this incident.  See Lucas Ex. B, D186, listing medications as "Oxycodone."

8.      Annexed hereto as **Exhibit "C"** is a transcripts of the March 24, 2016 court appearance.  At that hearing counsel concedes that the March 21, 2016 trial date was adjourned under false pretenses, and that counsel had not begun preparing for the March 28, 2016 trial date, despite having concerns about co-counsel sufficient to hire a private investigator.

9.      Annexed hereto as **Exhibit "D"** is a true and correct summary of the time records of the four attorneys who actively participated in the defense of this case on behalf of the Office of Corporation Counsel.  Attorneys in the Special Federal Litigation Division of the New York City Law Department are required to keep records of the time spent on each of the separate matters that they work on.  These records are similar to the time entries prepared by counsel in private practices.  Each record includes (a) the date the work was performed; (b) the case number and name that the work applied to; (c) the amount of time, in quarter-hour increments, that was dedicated to the task or activities for the case on that date; (d) a task or activity code loosely categorizing at least part of the work performed; and (e) in some cases, a brief description of the task or tasks worked on.  This information is entered into a database maintained by the New York City Law Department.  The information is used for an array of purposes, including, but not limited to, allocating City resources to appropriately staff litigation.  Where it is appropriate or necessary for the Law Department to seek reimbursement for fees, this information has been

offered and accepted by courts as a suitable record of the work performed by the City's attorneys. The summary attached as Exhibit "D" contains all of the time entries for the matter number assigned to the litigation of <u>Martin v. City of New York, et al.</u>, No. 11 Civ. 4507 (ARR), from the commencement of the action through the date of the final judgment.

10.     In addition to the attorneys discussed below, I was assisted over the duration of the case by our litigation paralegals and other staff, who diligently requested, collected, and maintained the documents produced by both sides in this case and performed similar support tasks for the attorneys handling the case.    From the cases I have reviewed in preparing this motion I am aware that it is customary for plaintiffs' attorneys to seek, and be awarded, professional fees of $75/hr to $175/hr for paralegal support.   However, because non-attorney staff of the New York City Law Department are not required to keep case-by-case records of their activities, the Defendants are not submitting a claim for the indispensable support provided by the non-attorney staff who assisted with this case.

11.     In addition to myself, Ms. Shoffel, and Ms. Speight, Brian Francolla, as a supervising attorney, made substantive contributions to the handling of this case.    The qualifications of all of the attorneys, as well as the scope of their assistance, and the amount of time they contributed to the representation are as follows:

- **Senior Counsel Andrew Lucas** was the lead counsel in this matter when it was first received by the City.  This included responsive pleadings, all discovery, representation of the defendants, as well as motion practice, and trial appearances.  I graduated in 2009 and joined the Law Department in in August of 2009 in the Tort Division where I tried four jury cases in State Supreme Court, and argued a section 1983 appeal before the First Department.  I was awarded the 2010 Legal Rookie of the Year Award and subsequently transferred to the Special Federal Litigation division in October of 2011.  Beginning in the Spring of 2012 I was assigned as lead counsel on cases arising out of the Occupy Wall Street movement, and

tried the first Occupy Wall Street case to verdict in September of 2015. I served as a law clerk for Magistrate Judge Donna Martinez in the District of Connecticut in 2014. I was promoted to senior counsel after my return in 2015.

- **Senior Counsel Amanda Shoffel** was assigned this case for trial preparations and trial beginning in mid-February. This immediately included the motions in limine and jury charge and included substantial preparation for trial including the cross examination of plaintiff and defense witnesses. Ms. Shoffel graduated in 2009 and practiced with the Philadelphia City Solicitors office from 2010-2015. She was promoted from Assistant to Deputy City Solicitor in 2012. She came to the law department as Senior Counsel in the summer of 2015 and has tried 34 cases, including over 20 in Federal Court.

- **Assistant Corporation Counsel Melanie Speight** was assigned this case for trial preparations and trial in early-march. This included preparation of pre-trial submissions and motion papers, as well as preparations to examine several defense and non-party witnesses. Ms. Speight graduated in 2011 and joined the Special Federal Litigation Division the same year. She was awarded the 2012 Legal Rookie of the Year Award. She is attorney of record in over 110 cases in the Southern and Eastern District of New York, and has tried three federal cases to verdict since December of 2014.

- **Senior Counsel Brian Francolla** was assigned to supervise the case for trial. This included review of filings, and assistance with witness preparation and examinations. He graduated in 2007 and began to practice in the Special Federal Litigation Division the same year. He was promoted to Senior Counsel in 2012. He was awarded the NYC Bar Association municipal affairs award in 2012, and has tried 22 cases to verdict, including 21 cases in federal court.

- **Deputy Division Chief Patricia Miller** supervises all trials in the Special Federal Litigation Division, including the trial in this matter. Ms. Miller graduated from law school in 1988, and clerked for The Honorable William M. Acker, Jr., on the United States District Court for the Northern District of Alabama. Ms. Miller was a litigation associate with a prominent law firm in New York, prior to joining the Law Department in 1992. Ms. Miller has tried as first chair over fifty federal employment and civil rights cases to verdict in the Eastern and Southern Districts of New York. Since 2008, Ms. Miller has also been an adjunct professor at Fordham Law.

Ms. Miller supervised the preparation of this case for trial, providing her substantial experience and assistance during trial preparations.  Between February 2016 and the conclusion of the trial, Ms. Miller hours expended a significant number of hours on this matter, though defendants will not be providing any bill for her expertise and time spent supervising;

12.      Based on the foregoing, and my examination of the records attached hereto as **Exhibit D**, attorneys at the New York City Law Department expended a total of 713.75 hours in the defense of this action.  All of this work was undertaken in a good faith belief that it was necessary and useful to the defense of this litigation, and that no work was performed for the purpose of delay or for any other improper reason.  Further, the total number of hours expended on the defense of this case is reasonable and appropriate given the nature of the dispute and the manner in which it was litigated by Plaintiff's counsel.  This includes 356.5 hours worked from the start of February 2016 to present, and 234.25 hours from the week of March 13, 2016 to present.  Additionally each of these calculations are reasonable as they exclude hours worked by Ms. Miller, as well as paralegals and other support staff.

13.      The Law Department does not routinely bill its clients for professional services, and therefore does not maintain a formal "billing rate" for the attorneys who worked on this matter.  However, based on: (a) consultation with other attorneys and supervisors in the Law Department; (b) review of previous judicial orders awarding attorneys' fees for time expended by the Law Department; (c) review of cases awarding fees to plaintiffs' counsel against the City in § 1983 actions in this District; and (d) my own experience litigating fee applications and negotiating attorneys' fees with plaintiffs' counsel during my tenure with the Law Department, I believe that an appropriate "blended" rate for all of the attorneys who worked on this matter is $350 per hour.  The basis of this conclusion are discussed in the following paragraphs.

14.     On July 18, 2012, the Honorable Naomi Reice Buchwald, issued a Memorandum and Order in the case City of New York v. Venkataram, et al., No. 06 Civ. 6578, granting, *inter alia*, the City's request for sanctions under Fed. R. Civ. P. 37(d).   *See generally* 2012 U.S. Dist. LEXIS 99814 (S.D.N.Y. 2012).   The moving attorneys requested rates of $350/hr and $250/hr, and Judge Buchwald held that those rates were appropriate based on the attorneys' "relative experience."   See id. at *6, n.2 (citing Adams v. N.Y. State Educ. Dep't, 630 F. Supp. 2d 333, 347-350 (S.D.N.Y. 2009)).

15.     In the Adams case cited by Judge Buchwald, Magistrate Judge Peck granted the City's application for $11,202.90 in fees and costs under Fed. R. Civ. P. 41(d).   See generally 630 F. Supp. 2d 333.   In that case, the City sought $350/hr as a reasonable hourly rate for the senior attorney who worked on that case.   See id. at 347-50.   Magistrate Judge Peck performed a thorough analysis of the standard for determining a reasonable rate under the Second Circuit's decision in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), and went on to say:

> That "government attorneys receive a fixed salary and do not bill a client for their services," should not change the analysis of what rate a paying client would be willing to pay, and thus the rate should be the same whether private counsel, non-profit organization counsel or a government attorney performs the work. See, e.g., NLRB v. Local 3, Int'l Bhd. of Elec. Workers, 471 F.3d 399, 406-07 (2d Cir. 2006) ("[I]n Blum v. Stenson, 465 U.S. 886 (1984), the Supreme Court held that attorneys' fees awarded to a nonprofit legal aid organization under 42 U.S.C. § 1988 'are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.' Id. at 895.   Courts have applied Blum to calculate government attorneys' fees in a variety of contexts beyond civil rights litigation. Consistent with this precedent, district courts in this Circuit generally employ market rates to calculate awards of government attorneys' fees.   We also note that

8

because government attorneys receive a fixed salary and do not bill a client for their services, a proportionate share of attorneys' salaries does not necessarily correlate to expenses actually incurred in pursuing a given case. . . .  For those reasons, the Special Master properly calculated the [plaintiff's] attorneys' fees according to the prevailing market rate.") (citations omitted); Zlotnick v. Hubbard, 572 F. Supp. 2d 258, 276 n. 19 (N.D.N.Y. Aug. 18, 2008) (citing NLRB v. Local 3, Int'l Bhd. of Elec. Workers, 471 F.3d at 407); NLRB v. A.G.F. Sports Ltd., No. 93-MISC-049, 146 L.R.R.M. 3022, 1994 WL 507779 at *1 (E.D.N.Y. June 22, 1994) ("[I]t is established law in this Circuit that government attorneys may be reimbursed at the prevailing market rate."); United States v. Kirksey, 639 F. Supp. 634, 637 (S.D.N.Y. 1986) ("The hourly rate properly charged for the time of a government attorney is the amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.").

Adams, 630 F. Supp. 2d at 348.   On the basis of this analysis and "the Court's own knowledge of the prevailing hourly rates, the $350 requested by the City Defendants is a fair rate in this District for a senior labor and employment litigator. . . ." Id. at 348.  Given that this conclusion was reached more than eight years ago, I believe it is reasonable to conclude that the $350/hr rate for a senior attorney with qualifications similar to many of the attorneys on this case is not only reasonable, but most likely lower than the appropriate market rate for such services today.

16.     On November 2, 2006, the Honorable Paul A. Crotty issued an Order in the case City of New York v. Pollock, et al., awarding the City $242,132.50 in attorneys' fees and an additional $3,048.55 in costs pursuant to 18 U.S.C. § 1964(c), following a Civil RICO verdict against the defendants in the amount of $215,393.58.  See City of New York v. Pollock, et al., No. 03 Civ. 0253 (PAC), 11/02/2006 Order.  The amount of the fee award was based in part on Law Department accounting records similar to those attached hereto as Exhibit D.  Judge Crotty noted that the City's timekeeping system in the latter part of that case was "accurate and adequate to support [the City's] claim that almost 1,000 hours were expended by three attorneys

during a 26-month period." Id. at 3. In reaching a total fee award of almost a quarter-of-a million dollars, Judge Crotty adopted the City's request for a blended rate of $250/hr for the attorneys on the case. Considering the nine years that have elapsed since Judge Crotty's Order in Pollock, I believe that $350/hr is an appropriate blended rate for legal services performed in 2015 and 2016.

17. On March 7, 2014, the Honorable Katherine B. Forrest issued an Order in the case Andrew Abeyta v. City of New York, et al., awarding the City $211,747.50 in § 1988 attorneys' following a five day jury trial. See 2014 U.S. Dist. LEXIS 33766 (S.D.N.Y.). That fee award was based on an application submitted in November 2013 that relied on the same type of Law Department accounting records attached hereto as Exhibit D, and that requested a blended rate of $300/hr based on the seniority of the attorneys involved with that litigation. I believe that the higher blended rate of $350/hr requested in this case is appropriate in light of the average seniority and trial experience of the attorneys involved, as well as the passage of nearly two years since the fee application was made in the Abeyta case.

18. While the Special Federal Litigation Division does not routinely seek fees in § 1983 cases, we have substantial experience litigating fee applications under 42 U.S.C. § 1988, both in the rare cases where plaintiffs prevail at trial or, more frequently, where plaintiffs accept a Rule 68 Offer of Judgment. In such cases, it is not uncommon for attorneys with similar or less experience than those who worked on this case to request and receive rates of $350/hr and more. For example, on October 25, 2013, the Honorable Shira A. Scheindlin issued an Opinion and Order in Greene v. City of New York, et al., endorsing a recent "review of precedent in the Southern District [that] reveals that rates awarded to experienced civil rights attorneys over the

past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."   2013 U.S. Dist. LEXIS 154342, at *11-12, n.37 and accompanying text (quoting Tatum v. City of New York, 2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. 2010) (Gardephe, J.) (in turn quoting Vilkhu v. City of New York, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. 2009))).  In Vilkhu, plaintiff's firm Emery Celli Brinckerhoff & Abady was awarded fees ranging from $275 for an associate three years out of law school, to $525 for a named partner of the firm.  See 2009 U.S. Dist. LEXIS 73696, at *19-23, 29-30.[1]

19.     Defendants therefore believe that $350/hr is an eminently reasonable estimate, if not considerably less than, "what a reasonable, paying client would be willing to pay" for our services in 2016.  Cf. Greene, 2013 U.S. Dist. LEXIS, at *12-13, n.38 and accompanying text (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 164 (2d Cir. 2007), amended and superseded on denial of rehearing, 493 F.3d 110 (2d Cir. 2007), amended and superseded, 522 F.3d 182, 184, 192 (2d Cir. 2008)).  Given the seniority and experience of the attorneys who worked on this matter, a $350/hr blended rate is reasonable for the legal services performed.

Dated: New York, New York
        April 5, 2016;


                                        /s/_____
                                        Andrew Lucas
                                        *Senior Counsel*
                                        Special Federal Litigation Division

---

[1] The court in Vilkhu surveyed and applied rates from the Southern District because that is where plaintiff's counsel was located, despite noting that the general rule is that "reasonable rates . . . are based in part upon the prevailing rates for similar services in the district in which the awarding court sits."  2009 U.S. Dist. LEXIS, at *7 (emphasis added) (citations omitted).

cc:    Jason Leventhal, Esq.
       John Nonnenmacher, Esq.
       *Attorneys for Plaintiff*