UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ISA MARTIN,                                                          :
                                                                     :
                Plaintiff,                         :  11-CV-4507 (ARR)
                                                                     :
   -against-                                                        :
                                                                     :  OPINION & ORDER
ANTONIA GIORDANO, Individually; PHILIP                               :
VACCARINO, Individually; DANIEL KEATING,                             :
Individually; MICHAEL ALFIERI, Individually; BRUCE                   :
CEPARANO, Individually; and CITY OF NEW YORK;                        :
                                                                     :
                Defendants.                        :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

Pending before this court is a motion for sanctions and attorney's fees brought by defendants against plaintiff, Isa Martin, and his attorneys Jason Leventhal, Esq. and John Nonnenmacher, Esq. See Mot. for Sanctions, Dkt. #119.

This order resolves plaintiff's claim of attorney-client privilege with respect to certain information defendants seek to explore through an evidentiary hearing. For the reasons set forth below, this court agrees with plaintiff that the information is protected by attorney-client privilege. Because this court further finds that no exception or waiver vitiates the privilege, it holds that such information—submitted by plaintiff ex parte for in camera inspection—will not be compelled or considered as part of this court's decision on the pending motion.

## BACKGROUND

The relevant background is set forth in this court's order of April 20, 2016, Dkt. #143, and recited only briefly here.

This action concerns events surrounding plaintiff's arrest by officers of the New York

City Police Department ("NYPD") on June 20, 2010. Second Am. Compl., Dkt. #45. Plaintiff brought the underlying lawsuit pursuant to 42 U.S.C. § 1983 and New York law asserting claims for excessive force, deliberate indifference to serious medical need, and failure to intervene as well as assault, battery, and negligence. Id. ¶¶ 34-97.

Two days before trial was scheduled to commence, plaintiff filed a stipulation of voluntary dismissal with prejudice of all claims against all defendants pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. This court endorsed plaintiff's stipulation, retaining jurisdiction to adjudicate the motion for attorney's fees and sanctions that defendants indicated they planned to file. See Stipulation of Voluntary Dismissal, Dkt. #117, at 1.

In their motion, defendants seek sanctions against plaintiff and his attorney Mr. Leventhal in part on the basis of that stipulation of voluntary dismissal. Mot. for Sanctions, Dkt. #120, at 12-17. According to defendants, the circumstances surrounding this late dismissal support an inference that plaintiff's lawsuit was meritless. On that basis, defendants argue, the court should sanction plaintiff and Mr. Leventhal or, at a minimum, hold an evidentiary hearing to examine their conduct and their reasons for filing the stipulation of voluntary dismissal. Id.

In their oppositions to the motion, plaintiff and Mr. Leventhal both argued that the impetus for the dismissal is protected by attorney-client privilege. However, their oppositions did not supply factual contentions or legal arguments that would enable this court to determine the propriety of this claim. The court therefore ordered supplemental briefing "regarding whether attorney-client privilege protects the newly discovered information from disclosure and whether any exception or waiver is applicable under these circumstances." See Scheduling Order dated Apr. 14, 2016. On reviewing that supplemental briefing, the court found that the arguments advanced by the parties put the cart before the horse. Specifically, the court found that the parties

largely argued over exceptions or waivers without squarely addressing whether attorney-client privilege applied to the information in the first place. See Order dated Apr. 20, 2016, Dkt. #143, at 3. Finding that plaintiff had "offered nothing more than ipse dixit in support of his argument that attorney-client privilege protects the evidence defendants seek to explore through an evidentiary hearing," the court directed plaintiff to submit a sworn affidavit to the court ex parte for in camera inspection. Id. at 3-4; see Renner v. Chase Manhattan Bank, No. 98-CV-926, 2001 WL 1819215, at *4 (S.D.N.Y. July 13, 2001) (discussing the use of in camera review to determine the applicability of attorney-client privilege and collecting cases). The court specified several topics for plaintiff to address in his affidavit concerning the circumstances leading up to the decision to file a stipulation of voluntary dismissal. See Order dated Apr. 20, 2016, Dkt. #143, at 4-5.

Plaintiff's sworn affidavit was originally submitted to the court via electronic mail on April 22, 2016. An amended affidavit was sent to the court via electronic mail on April 29, 2016, and both versions were subsequently docketed under seal. The court has reviewed the sworn affidavit in camera and, in conjunction with the legal arguments previously supplied by the parties, makes the following ruling.

## LEGAL STANDARD

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" United States v. Zolin, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501). Attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," serves to facilitate "full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383,

3

389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)).

"The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989). To meet that burden, the person asserting attorney-client privilege must establish "[t]he relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed." Id. Further, the privilege protects only communications and not information: "the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) (citing United States v. Cunningham, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982)).

To test a claim of attorney-client privilege, the court engages in a two-step process. In the first step, the court determines whether attorney-client privilege applies to the statements at issue. Once attorney-client privilege is established, the court then considers whether any exceptions or waivers vitiate it. See Renner, 2001 WL 1819215, at *5 ("[o]nly if the Court decides that the privilege does apply would the Court consider further examination of the privileged communications on the question of the [pertinent] exception"). With respect to the second step, this court is mindful that "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." In re Cty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008).

**ANALYSIS**

Plaintiff's affidavit was required to address the circumstances leading up to his decision to file the stipulation of voluntary dismissal. See Order dated Apr. 20, 2016, Dkt. #143, at 4-5.

Portions of the affidavit addressing those circumstances do not relay attorney-client communications and therefore warrant disclosure here. They include plaintiff's assertions that he met with Mr. Leventhal and his associate on March 25; that the meeting occurred at Mr. Leventhal's office in Brooklyn; and that it lasted approximately one hour. Plaintiff then describes communications with his lawyers that took place in the context of preparing him to testify at trial. It was in the course of these communications that Mr. Leventhal discovered the new information he describes in his submissions to this court that led him to advise his client to withdraw the lawsuit.

### A. Attorney-Client Privilege

The court is satisfied that plaintiff has met his burden to establish the attorney-client privilege over these communications. There is no question that an attorney-client relationship existed between plaintiff and the attorneys with whom he met, nor is there any doubt that the purpose of the meeting was for plaintiff to seek, and his attorneys to provide, legal advice regarding his testimony in the imminent trial. The circumstances also make clear that the communications between plaintiff and his attorneys were made in confidence. For these reasons, plaintiff's claim of attorney-client privilege is valid. See Schwimmer, 892 F.2d at 244; In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1036-37.

This court also finds that the information discussed during this meeting is impossible to divorce from the protected communications. The court sees no way to disclose the information without divulging communications by plaintiff through which he sought legal advice.

### B. Exceptions and Waivers

Having determined that attorney-client privilege applies to the communications at issue, this court must consider whether any exception or waiver vitiates the privilege. Defendants argue

that two exceptions apply to these circumstances: (1) implied waiver, and (2) the crime-fraud exception. The court rejects both arguments.

      1.     <u>Implied waiver</u>

Defendants argue that plaintiff has impliedly waived attorney-client privilege by seeking to use it as both a sword and a shield. Specifically, defendants argue that it is unfair for plaintiff's counsel to insist that the impetus for filing the stipulation of voluntary dismissal was completely unrelated to the merits of his suit while simultaneously insisting that the impetus is shielded by attorney-client privilege.

"Generally, '[c]ourts have found waiver by implication [1] when a client testifies concerning portions of the attorney-client communication, [2] when a client places the attorney-client relationship directly at issue, and [3] when a client asserts reliance on an attorney's advice as an element of a claim or defense.'" <u>In re Cty. of Erie</u>, 546 F.3d at 228 (quoting <u>Sedco Int'l S.A. v. Cory</u>, 683 F.2d 1201, 1206 (8th Cir. 1982)) (internal ellipses omitted). Although defendants do not identify which of these circumstances apply, they seem to argue either that plaintiff placed his attorney-client relationship at issue or that he relied on his attorney's advice as an element of his claim or defense. This court disagrees.

Plaintiff has not placed his attorney-client relationship directly at issue. The "at issue" waiver is narrow but ill-defined. Its animating principle is fairness and, more precisely, "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." <u>In re Cty. of Erie</u>, 546 F.3d at 229 (quoting <u>John Doe Co. v. United States</u>, 350 F.3d 299, 306 (2d Cir. 2003), <u>as</u> <u>amended</u> (Nov. 25, 2003)).

However, many courts have conflated this form of waiver with reliance on counsel or have denied its application without explaining its contours. In In re Cty. of Erie, for example, the Second Circuit's discussion vacillates between these two forms of waiver and seems at certain points to conflate them. Nonetheless, that court firmly rejected a broad definition of the at issue exception—one that would vitiate privilege whenever the holder puts the protected information at issue by making it relevant. 546 F.3d at 228-30. That court instead adopted a more narrow definition, concluding that the holder waives privilege when he or she attempts to influence the decisionmaker on the merits of some claim or defense by reference to the allegedly privileged information. Id.; see also Granite Partners v. Bear, Stearns & Co., 184 F.R.D. 49, 55 (S.D.N.Y. 1999) ("Waiver typically occurs when the party asserting the privilege placed a protected document in issue through some affirmative act intended to insure [sic] to that party's benefit or where the party makes selective use of the privileged materials.").

Plaintiff does not address the at issue waiver in his submissions, but Mr. Leventhal does. He argues that plaintiff did not place the privileged communications at issue because he "specifically chose to avoid the potential that the subject matter of the privileged communication become an issue during his trial." See Letter from Jason Leventhal dated Apr. 19, 2016, Dkt. #138, at 3. The court has difficulty understanding this rationale. It seems that the question the court must answer is whether, in asserting that plaintiff's impetus for filing a stipulation for voluntary dismissal is protected by attorney-client privilege, plaintiff has placed that impetus and related communications at issue.

"Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000). In this case, the privilege is asserted

7

in the context of arguments about the circumstances preceding plaintiff's voluntary dismissal of his claims. Defendants argue that they should be able to explore why plaintiff voluntarily dismissed his claims, whereas plaintiff argues that they should not. Specifically, plaintiff argues that defendants have offered nothing more than speculation about the impetus for plaintiff's voluntary dismissal and that such speculation neither warrants a hearing nor vitiates privilege.

In this context, the court does not find that fairness requires disclosure. Plaintiff has not injected the privileged communications into this dispute through some affirmative act with the aim of benefiting himself. Nor has plaintiff selectively used the privileged materials. Instead, plaintiff has simply responded to the pending motion for sanctions and attorney's fees. In doing so, plaintiff has advanced multiple arguments for why an evidentiary hearing is unnecessary. These arguments include his claim that a large part of the evidence defendants seek to elicit at that hearing is subject to attorney-client privilege. It is fair to say that plaintiff uses attorney-client privilege as a shield, but he does not use it as a sword.

The same cannot be said for Mr. Leventhal. He has stated in multiple submissions to the court that "[t]he information that warranted the withdrawal of plaintiff's claims did not implicate the facts that formed the basis of plaintiff's claims." Decl. of Jason Leventhal, Dkt. #128, ¶ 25; see also Jason Leventhal's Mem. in Opp'n to Defs.' Mot. for Sanctions, Dkt. #127, at 9. In making these assertions to the court, Mr. Leventhal has attempted to influence this court with respect to the determination it must make on the bona fides of plaintiff's claims by reference to the allegedly privileged information. Mr. Leventhal essentially asks defendants and this court to take his word for it that the privileged communications did not involve the merits while refusing to reveal what they did involve. This strikes the court as the kind of unfairness the at issue waiver has developed to prevent.

Importantly, however, plaintiff has not advanced that argument and thereby placed the communications at issue. Plaintiff is the holder of the privilege, not Mr. Leventhal. Plaintiff is separately represented for purposes of the pending motion and has not impliedly waived the privilege he holds. This court therefore does not hold against plaintiff Mr. Leventhal's attempts to use the privileged communications as a sword and a shield. See In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) ("This court has recognized that implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'") (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (emphasis added).

Similarly, plaintiff does not rely on his attorney's advice as an element of his claim or defense, thereby implicating the third form of implied waiver. Assuming arguendo that this form of waiver relating to "claims" and "defenses" is applicable in the context of a post-dismissal motion for sanctions and attorney's fees, plaintiff's defense to the motion is not advice of counsel. See In re Cty. of Erie, 546 F.3d at 228 (describing an advice-of-counsel defense as a "quintessential example" of this form of implied waiver). Plaintiff states in his brief that discussions with his counsel predicated the filing of the stipulation of voluntary dismissal. See Pl.'s Suppl. Mem. in Further Opp'n to Defs.' Mot for Attorney's Fees, Dkt. #141, at 2. He does not claim that his impetus for filing was good faith reliance on advice of counsel. These circumstances are distinguishable. The post hoc, ergo propter hoc reasoning required to find waiver applicable here would create an exception that swallows the rule. It is not the case that a client who refers to the existence of attorney-client privileged communications prior to making a decision or taking an action thereby asserts reliance on counsel with respect to that decision or action. See Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994)

(holding that this form of waiver does not apply "merely because the attorney's advice might affect the client's state of mind in a relevant manner"). Accordingly, plaintiff has not waived the attorney-client privilege by asserting reliance on his counsel's advice as an element of a claim or defense.

    2.    <u>Crime-fraud exception</u>

Defendants argue that the crime-fraud exception provides an additional basis to pierce the privilege. Specifically, they claim that the circumstances surrounding plaintiff's voluntary dismissal entitle defendants to an evidentiary hearing to determine whether the crime-fraud exception applies here. Defendants also suggest that <u>in camera</u> inspection might be appropriate to permit this court to assess whether that exception applies to the communications at issue.

"A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." <u>Amusement Indus., Inc. v. Stern</u>, 293 F.R.D. 420, 425 (S.D.N.Y. 2013) (quoting <u>Clark v. United States</u>, 289 U.S. 1, 15 (1933)). For this reason, attorney-client communication in furtherance of a crime or fraud does not enjoy attorney-client privilege. <u>In re Richard Roe, Inc.</u>, 68 F.3d 38, 40 (2d Cir. 1995). The fact that the communication at issue might provide evidence of a crime or fraud is insufficient to vitiate the privilege, however: "[i]nstead, we required that there be (i) a determination that 'the client communication or attorney work product in question was <u>itself</u> in furtherance of the crime or fraud' and (ii) 'probable cause to believe that the particular communication with counsel or attorney work product was <u>intended</u> in some way to facilitate or to conceal the criminal activity.'" <u>In re Richard Roe, Inc.</u>, 168 F.3d 69, 71 (2d Cir. 1999) (quoting <u>In re Richard Roe, Inc.</u>, 68 F.3d at 40). "The pertinent intent is that of the client, not the attorney." <u>In re Omnicom Grp., Inc. Sec. Litig.</u>, 233 F.R.D. 400, 404 (S.D.N.Y. 2006). A definitive showing that the client's objective was fraudulent

is not required, but the party invoking the exception must show a reasonable basis or substantial reason for the asserted belief. In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1039.

A more lenient standard applies to defendants' request for in camera inspection of the communications at issue. See Zolin, 491 U.S. at 572 ("a lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege"). Before such inspection takes place, however, the party invoking the exception "must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." Id. at 574-75. That showing may be accomplished through "any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." Id. at 575.

Defendants advance three reasons why they are entitled to a hearing[1] or in camera review to demonstrate that the crime-fraud exception applies. First, they cite "the repeatedly shocking conduct in this case," apparently referring to alleged misconduct on the part of plaintiff's counsel, which this court will adjudicate in the pending motion for sanctions and attorney's fees. Defs.' Suppl. Mem. of Law Related to Sanctions, Dkt. #135, at 7. Second, they cite alleged contradictions in the record regarding plaintiff's use of oxycodone and the source of plaintiff's injuries. Id. at 7. Third, they cite the abrupt and belated conclusion of the litigation—including the fact that plaintiff's counsel sought to settle plaintiff's claims for large sums immediately before filing the stipulation of voluntary dismissal and the fact that Mr. Leventhal sounded

---

[1] Defendants have provided no authority in support of their contention that an evidentiary hearing is the proper vehicle for determining whether the crime-fraud exception applies here. Nor has this court located any such authority. Accordingly, the proper analysis for this court to undertake is whether it is satisfied that defendants have met their burden for this court to either apply the crime-fraud exception or examine its application more closely through in camera inspection of the communications at issue.

"shocked and troubled" when he advised counsel for defendants of the dismissal, leaving them with the "impression . . . that presenting the case would have been tantamount to a fraud upon the court." Id. at 8.

None of these claims, singly or jointly, warrants in camera inspection of the challenged information, much less outright application of the crime-fraud exception. First, the fact that plaintiff's lawyers exhibited dilatory and disobedient conduct in the course of the litigation does nothing to demonstrate that the communications on March 25 were in furtherance of a crime or fraud and intended to facilitate or conceal the criminal or fraudulent activity. Asserting otherwise is sheer speculation, particularly where there is no indication that plaintiff's lawyers undertook such conduct at plaintiff's behest. Second, the fact that alleged contradictions exist in the record does not constitute a substantial basis for believing that the communications furthered a crime and were intended to do so. Contradictions proliferated both sides of the underlying case, and although they may have provided fertile ground for cross-examination, they do not ipso facto render attorney-client communications by the party who caused them susceptible to this exception. Third, the fact that plaintiff filed his stipulation of voluntary dismissal abruptly and belatedly does not provide a reasonable basis for believing that the communications furthered a crime and were intended to do so. This court can easily imagine numerous benign reasons why a plaintiff might decide on the eve of trial to withdraw his or her suit. This decision is not inherently suspect, particularly in view of the vicissitudes that attend litigation at its final stages. See New York Stock Exch., Inc. v. Ghary, No. 00-CV-5764, 2003 WL 68038, at *2 (S.D.N.Y. Jan. 8, 2003). The conduct of plaintiff and his attorneys is equally consistent with a legitimate tactical decision, id., and second-guessing that decision is an insufficient basis to trigger the crime-fraud exception.

Of course, the court has already conducted in camera inspection of plaintiff's sworn affidavit concerning the attorney-client communications in order to adjudicate his claim of privilege. Accordingly, the court can confirm that even if defendants had met their burden to show that in camera inspection was warranted on the issue of the crime-fraud exception, such inspection satisfies the court that the crime-fraud exception has no application here.

**CONCLUSION**

For the foregoing reasons, this court upholds plaintiff's claim of privilege over the attorney-client communications that preceded his filing of the stipulation of voluntary dismissal in this case. Plaintiff's original and amended affidavits will remain under seal, and this court will not consider them in adjudicating the pending motion for sanctions and attorney's fees. Further, the parties to these communications will not be compelled to answer inquiries into them—or into the information inextricably intertwined with these communications—at an evidentiary hearing related to the pending motion, should this court schedule one.

SO ORDERED.

s/
Allyne R. Ross
United States District Judge

Dated: May 4, 2016
Brooklyn, New York