UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
ISA MARTIN,                                            :
                                                       :
                            Plaintiff,                 :        11-CV-4507 (ARR) (JO)
                                                       :
            -against-                                  :        <u>OPINION & ORDER</u>
                                                       :
ANTONIA GIORDANO, Individually; PHILIP                 :
VACCARINO, Individually; DANIEL KEATING,               :
Individually; MICHAEL ALFIERI, Individually; BRUCE     :
CEPARANO, Individually; and CITY OF NEW YORK;          :
                                                       :
                            Defendants.                :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Pending before this court is a motion for sanctions and attorney's fees brought by

defendants against plaintiff, Isa Martin, and his attorneys, Jason Leventhal, Esq. and John

Nonnenmacher, Esq. <u>See</u> Mot. for Sanctions, Dkt. #119.

It has been said that "determining whether a case or conduct falls beyond the pale is

perhaps one of the most difficult and unenviable tasks for a court." <u>Schlaifer Nance & Co. v.</u>

<u>Estate of Warhol</u>, 194 F.3d 323, 341 (2d Cir. 1999). This court wholeheartedly agrees. In

partially granting the instant motion, as set forth below, this court sanctions an attorney for the

first time in thirty years on the bench. This court does so unhappily but without reservation; it

simply cannot countenance the behavior exhibited by plaintiff's counsel in this action.

For the reasons set forth below, this court sanctions Mr. Nonnenmacher and Mr.

Leventhal in the form of a public reprimand. This court also awards defendants reasonable

expenses, including attorney's fees, incurred because of violations of court orders by Mr.

Nonnenmacher and Mr. Leventhal as outlined below. The calculation of such expenses is

respectfully referred to the Honorable Magistrate Judge James Orenstein.

Pursuant to Civil Rule 1.5(f) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, this court refers the concerns it raises regarding the conduct of Mr. Nonnenmacher and Mr. Leventhal to the Chief Judge for referral to the Committee on Grievances for that committee to consider the imposition of discipline or other relief.

## BACKGROUND

### A.     The Underlying Lawsuit

Plaintiff brought the underlying lawsuit pursuant to 42 U.S.C. § 1983 and New York law based on events surrounding his arrest by officers of the New York City Police Department ("NYPD") on June 20, 2010. He filed his lawsuit on September 16, 2011, see Compl., Dkt. #1, and subsequently amended his complaint on June 15, 2012, see Am. Compl., Dkt. #11, and again on May 15, 2015, see Second Am. Compl., Dkt. #45. The litigation proceeded before the Honorable Judge Sandra L. Townes until January 27, 2016, when plaintiff's case was reassigned to this court. See Order Reassigning Case dated Jan. 27, 2016.

In the second amended complaint, plaintiff alleged that he was beaten by NYPD police officers and struck with an NYPD vehicle, causing him to sustain serious physical injuries. Second Am. Compl., Dkt. #45, ¶¶ 16-22. Plaintiff further alleged that NYPD police officers delayed his access to medical treatment for his injuries. Id. ¶¶ 23-26. Based on these facts, plaintiff asserted claims under 42 U.S.C. § 1983 for excessive force, deliberate indifference to serious medical need, and failure to intervene. Id. ¶¶ 34-57. He also asserted claims under New York law for assault, battery, and negligence. Id. ¶¶ 58-97. Each state law claim was alleged against one or more individual defendants as well as the City of New York under the doctrine of

respondeat superior. Id. ¶¶ 95-97.

Defendants never moved for dismissal of plaintiff's action under Rule 12 of the Federal Rules of Civil Procedure. They did seek a pre-motion conference concerning an anticipated motion for summary judgment under Rule 56. See Defs.' Mot. for Pre-Mot. Conference, Dkt. #26. Defendants sought summary judgment on some but not all of plaintiff's claims. Plaintiff agreed to voluntarily dismiss several of his claims but opposed summary judgment with respect to others. See Pl.'s Resp. to Defs.' Mot. for Pre-Mot. Conference, Dkt. #32, at 2. The proceedings that followed, described in a separate order of this court, resulted in the second amended complaint outlined above. See Order dated Mar. 7, 2016, Dkt. #73, at 2-3.

Judge Townes ordered the parties to appear at a pretrial conference on January 22, 2016, and scheduled trial to commence on March 21, 2016. See Civil Pretrial and Trial Scheduling Order, Dkt. #39. The pretrial conference was later adjourned to February 22, 2016. See Am. Civil Pretrial and Trial Scheduling Order, Dkt. #47.

**B.      The Pretrial Proceedings Before This Court**

Before the February 22 pretrial conference took place, the matter was reassigned to this court. See Order Reassigning Case dated Jan. 27, 2016. This court contacted the attorneys of record via telephone on February 4 to schedule a telephonic status conference. The court was unable to reach Brett H. Klein, Esq., an attorney of record for plaintiff. When the court reached Jason Leventhal, another attorney of record for plaintiff, he advised the court that Mr. Klein was no longer involved in the prosecution of plaintiff's action.[1] Mr. Leventhal participated in the

---

[1] Defendants have not sought sanctions against Mr. Klein. This court does not sanction Mr. Klein or address his conduct herein, except to note that Mr. Klein should have sought this court's permission to withdraw as attorney of record if he was no longer involved in prosecuting plaintiff's action. That said, it is within the court's discretion to consider and impose sanctions only against those lawyers who remained active on the case at the time of the challenged conduct. See generally Lepucki v. Van Wormer, 765 F.2d 86, 87 n.1 (7th Cir. 1985) ("[N]othing in either

status conference on behalf of plaintiff. <u>See</u> Minute Entry dated Feb. 4, 2016. During the status conference, the court advised the parties that it intended to maintain the March 21 trial date set by Judge Townes. Mr. Leventhal advised the court that he hoped to take vacation with his family at that time. He asked the court to postpone the trial. The court explained that it was unable to postpone the trial for several reasons; however, the court agreed to move up the trial date so it would be less disruptive to Mr. Leventhal's vacation plans. The court set a deadline of February 22 for the parties to file all pretrial submissions in a manner consistent with this court's Individual Practices and Rules.[2] This deadline gave counsel two and a half weeks to prepare their pretrial submissions. Trial was scheduled to commence March 14. <u>See</u> Minute Entry dated Feb. 4, 2016.

  1.  <u>Pretrial submissions and conferences</u>

  On February 19, the final business day before the pretrial submissions were due, the court received a letter from John Nonnenmacher. <u>See</u> Mot. for Extension of Time to File Pretrial Order, Dkt. #51. His letter stated that plaintiff had retained him to serve as trial counsel in this matter. <u>Id.</u> Mr. Nonnenmacher represented that he had intended to file a notice of appearance, along with the joint pretrial order, on that date. <u>Id.</u> However, Mr. Nonnenmacher stated that he learned of the loss of "a close family member" and "was not able to get to [his] office as [he] was consoling [his] mother." <u>Id.</u> He requested an extension of "at least one week" to complete the pretrial submissions. <u>Id.</u> The court entered an order on the same date expressing condolences and

---

Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 limits a court's discretion to penalize only those lawyers who remain active on a case at the time the sanction is imposed.").

[2] This court's Individual Practices and Rules demand extensive pretrial submissions in civil cases. <u>See</u> Individual Practices and Rules of Judge Allyne R. Ross, Section IV. They require parties to submit a joint pretrial order that includes, <u>inter alia</u>, objections, cross-designations, and oppositions and replies to any motions in <u>limine</u>. By setting a deadline for submission of the joint pretrial order, this court necessarily contemplates that the parties will exchange materials sufficiently in advance of that deadline to permit timely joint submission.

granting a one-day extension to February 23. <u>See</u> Order dated Feb. 19, 2016. The court declined to grant a longer extension for several reasons, including its need to maintain the trial date, and its understanding that the pretrial submissions were—or at least should have been—substantially complete before Mr. Nonnenmacher learned of the death in his family. The court expressly warned, "no further extension will be granted and the trial date will not be postponed." <u>Id.</u>

On February 22, this court received a letter from counsel for defendants indicating that they had "been unable to communicate substantively with recently appointed trial counsel for plaintiff," referring to Mr. Nonnenmacher. <u>See</u> Letter from A. Shoffel dated Feb. 22, 2016, Dkt. #52, at 1. Counsel for defendants explained that they had also contacted Mr. Leventhal, "who handled this matter during discovery, but Mr. Leventhal advised [that they] needed to speak with Mr. Nonnenmacher since he would be serving as trial counsel." <u>Id.</u> at 1 n.1. Counsel for defendants rightly noted that plaintiff's counsel's failure to furnish several components of the pretrial submissions, including witness and exhibit lists, prevented them from preparing the objections and responses required to prepare a joint pretrial order in advance of the February 23 deadline for all submissions. <u>Id.</u> at 1.

It was clear to the court that Mr. Nonnenmacher had no intention of complying with the February 23 deadline. The court also recognized that receipt of pretrial submissions after that deadline would not allow the court sufficient time, in light of its docket and calendar, to complete the work necessary to commence trial on March 14. Accordingly, this court entered an order adjourning the trial date to March 21 and setting a deadline of February 26 at noon for all pretrial submissions. <u>See</u> Order dated Feb. 23, 2016, Dkt. #53, at 1-2. The court also expressed concerns regarding Mr. Nonnenmacher's conduct and raised the specter of sanctions for the first time:

> Plaintiff and his counsel are responsible for the prosecution of this matter. That responsibility includes complying with the deadlines ordered by this court and complying with this court's Individual Practices and Rules. If Mr. Nonnenmacher seeks to serve as trial counsel in this matter, he may do so only if he is prepared to accept that responsibility. His retention does not excuse noncompliance with this court's orders and rules. Such conduct is sanctionable regardless of when retention occurs.

Id. at 2.

On the same date it entered that order, the court received another motion for extension of time from Mr. Nonnenmacher. See Mot. for Extension of Time to File Pretrial Submission, Dkt. #54. He provided the court with unsolicited details regarding the death in his family and related arrangements. Id. He beseeched the court to extend the deadline for pretrial submissions from February 26 to February 29. Id. The court responded to his motion as follows:

> The court has received a request from John Nonnenmacher, Esq., to extend the deadline for pretrial submissions from Friday, February 26 to Monday, February 29. First, Mr. Nonnenmacher's letter is addressed to the wrong judge. This matter was transferred from the Honorable Judge Sandra L. Townes to this court in January 2016. All further communications should be addressed to this court and must comply with this court's Individual Practices and Rules. Second, Mr. Nonnenmacher still has not filed a notice of appearance in this matter. He is directed to do so before any further filings on this docket. Third, the court will grant an extension until 10:00 a.m. on Monday, February 29 for all pretrial submissions. All pretrial submissions must be electronically filed by that date and time. Additionally, courtesy copies must be received in chambers on that date.

See Order dated Feb. 23, 2016. This extended deadline provided Mr. Nonnenmacher the full relief he had sought in his motions of February 19 and February 23.

On the morning of February 29, the court received a letter from defendants requesting additional time to file the joint pretrial submissions. See Mot. for Extension of Time to File Pretrial Submissions, Dkt. #55, at 2-3. Defendants provided a detailed description of their exchanges with Mr. Nonnenmacher and explained how his belated transmission of several components of the pretrial submission deprived defendants of an opportunity to prepare their

responses. Id.

This court immediately scheduled a telephonic status conference to address Mr.
Nonnenmacher's dilatory conduct. See Order dated Feb. 29, 2016. At that conference, the court
began, "I am directing this to Mr. Nonnenmacher and Mr. Leventhal. I really am at a loss to
understand why there has been such a complete disregard of multiple court orders regarding Pre-
Trial materials in this case." Tr. of Feb. 29, 2016 Status Conference at 3.[3] The court outlined the
history of plaintiff's counsel's violations of court orders to date. Id. at 3-5. The court concluded,
"I simply do not understand whether or not Court deadlines are meaningless to you. An attorney
cannot enter a case unless that attorney is prepared to meet the Court's deadlines for the trial."
Id. at 5. The court cautioned that it would "start imagining sanctions" if counsel could not "get it
together." Id. at 9. It ordered that all pretrial submissions, including courtesy copies, were due in
chambers by noon on March 2. Id. at 10. Following this telephonic status conference, Mr.
Nonnenmacher finally entered his notice of appearance. See Notice of Appearance by John
Joseph Nonnenmacher, Dkt. #56.[4]

The parties filed several pretrial submissions on March 2. See Dkts. #58-65. On
reviewing them, this court discovered that they were deficient in several respects. The court
outlined those deficiencies on the docket. See Order dated Mar. 3, 2016. Among them, plaintiff
failed to comply with this court's order directing the parties to follow its Individual Practices and
Rules governing pretrial submissions. Id. For example, plaintiff failed to provide his objections
to the exhibits listed by defendants. Id. Further, plaintiff failed to furnish courtesy copies of

---

[3] All citations to this and other transcripts are to the rough versions on file with the court. These transcripts are being
finalized and uploaded to ECF as they become available.

[4] Because the docket clerk had apparently already copied Mr. Nonnenmacher's contact information from his prior
letters and added it to the docket sheet, that clerk wrote "notification declined or already on case" when docketing
his Notice of Appearance. See Notice of Appearance by John Joseph Nonnenmacher, Dkt. #56.

plaintiff's proposed exhibits. Id. The court ordered that plaintiff provide two bound copies to chambers via hand delivery by 2:00 p.m. on that date. Id. Additionally, the court ordered that Mr. Nonnenmacher contact the court immediately to provide a working telephone number where the court could reach him because it had been unable to contact him via telephone or leave him voicemail messages. Id.

Despite this court's unambiguous order, plaintiff's counsel did not provide proposed exhibits, and Mr. Nonnenmacher did not provide a working telephone number. The next day, this court scheduled a telephonic status conference to address these persistent problems. See Order dated Mar. 4, 2016. Mr. Nonnenmacher then filed a letter seeking an extension of time to deliver his proposed exhibits to the court. See Mot. for Extension of Time to File Ex. Binders dated Mar. 4, 2016, Dkt. #66. His excuse for noncompliance with court orders was a "confluence of factors":

> I recently left my partnership of twenty years, Bader, Yakaitis & Nonnenmacher, and joined a new firm, moving offices last week. My obligations at my new firm required me to appear for potential jury selections in Supreme Court, Queens County this past Tuesday and Wednesday, and in Supreme Court, New York County, yesterday. I have also had to deal with issues for my mother, who is hospitalized in Staten Island. As a result of all of these factors, I relied on someone who failed to prepare and deliver the exhibits to the Court.
>
> After learning of this failure yesterday evening, I worked diligently to prepare a new set of exhibits which I have completed. This morning, I am appearing for another jury selection in Supreme Court, Bronx County. After my appearance, I will drive to Mr. Leventhal's office, we will prepare the exhibit binders and promptly deliver them to the Court.

Id.

After receiving this letter, the court held the telephonic status conference it had already scheduled regarding plaintiff's counsel's noncompliance with court orders. Mr. Nonnenmacher did not participate in that conference, but Mr. Leventhal did. The court told Mr. Leventhal,

> I need to have an understanding with you. You were the lawyer on the case. You are still the lawyer on the case. You may have sought assistance from Mr. Nonnenmacher, but you are responsible for getting things to the Court. It is really – it is beyond ridiculous how many times I have had to ask you and put off deadlines. I want you to know today is the end of it. I am going start assessing sanctions. So please take this seriously.

Tr. of Mar. 3, 2014 Status Conference at 2. Describing plaintiff's counsel as exhibiting "an excruciatingly lackadaisical attitude," the court cautioned Mr. Leventhal that it would assess sanctions on an hourly basis starting at 3:00 p.m. if it did not receive plaintiff's proposed exhibits by that time. Id. at 3. The court identified additional deficiencies in the pretrial submissions and provided detailed instructions and firm deadlines for curing them. See Order dated Mar. 4, 2016. Plaintiff's proposed exhibits were ultimately delivered to the court by Mr. Leventhal's paralegal later that day, albeit not by the court-ordered deadline.

This court scheduled the pretrial conference for March 9. See Order dated Mar. 8, 2016. It circulated a proposed jury charge in advance and advised the parties that it would discuss the draft with them at the pretrial conference. See Notice dated Mar. 7, 2016, Dkt. #74. The court also advised the parties that it planned to rule, at least preliminarily, on the admissibility of all proposed exhibits at the pretrial conference. See Order dated Mar. 3, 2016.

Appearing on behalf of plaintiff at the pretrial conference were Mr. Nonnenmacher, Mr. Leventhal, and Edward Donlan, who never entered an appearance on this matter. During the pretrial conference, the court issued rulings regarding motions in limine filed by the parties. Then the court addressed the admissibility of the proposed exhibits. When the court inquired into one of plaintiff's proposed exhibits, Mr. Nonnenmacher conceded that he had not brought his document folder, which apparently included all of plaintiff's proposed exhibits, to the pretrial conference. See Tr. of Mar. 9, 2016 Pretrial Conference at 63. When the court asked the parties if they had any comments on the jury charge, Mr. Nonnenmacher conceded that he had not yet

prepared his objections. Id. at 92 ("Judge, I go from trial to trial. It's not an excuse."). The court

advised Mr. Nonnenmacher to work with his co-counsel if necessary to meet the court's orders.

Id. It also issued an order setting deadlines for additional pretrial submissions. See Order dated

Mar. 9, 2016.

Plaintiff's counsel continued to miss deadlines and thereby violate court orders. For

example, even though the court gave plaintiff's counsel additional time to submit comments on

the proposed jury charge, plaintiff's counsel failed to do so within the time provided. When

plaintiff's counsel did submit such comments after the deadline had passed, their format and

content did not comply with this court's orders. See Order dated Mar. 14, 2016, Dkt. #86, at 1-2.

The court addressed this conduct in a written order, again threatening sanctions:

> The failure by plaintiff's counsel to comply with these orders follows a pattern of
> troubling conduct on the part of plaintiff's counsel. Plaintiff's counsel has failed to
> meet numerous court-ordered deadlines for pre-trial submissions during the past
> month. Indeed, the docket sheet is replete with examples of this troubling conduct
> as well as warnings from this court about the imposition of sanctions should
> plaintiff's counsel continue to disregard court-ordered deadlines. See, e.g., Order
> dated Feb. 23, 2016, Dkt. #53, at 1-2 (detailing counsel's history of noncompliance
> with court-ordered deadlines and warning that such conduct is sanctionable); Order
> dated Mar. 4, 2016 (memorializing a status conference during which the court
> addressed counsel's continued noncompliance with court-ordered deadlines and
> warned that the court would begin to assess sanctions for late filings).
>
> Against this backdrop, this court is amply justified in deeming plaintiff's latest
> failure to comply with a court-ordered deadline as a waiver of any proposed
> revisions to the court's draft jury charge. As this court has advised plaintiff's
> counsel on numerous occasions, their flagrant disregard of these deadlines—
> particularly on the eve of trial—has made it difficult for the defendants and the
> court to meaningfully prepare for trial. This court refuses to countenance such
> conduct. Accordingly, the court will not consider the untimely and noncompliant
> submission by plaintiff's counsel related to the court's draft jury charge. See Fed.
> R. Civ. P. 16(f) (empowering the court to "issue any just order" when a party's
> attorney "is substantially unprepared to participate—or does not participate in good
> faith—in the conference" or "fails to obey a scheduling or other pretrial order").

Id. at 2-3. The court independently satisfied itself that none of plaintiff's proposed revisions were

legally necessary, and in doing so noted that most of them sought to introduce claims neither included in the pretrial submissions nor alleged in the operative complaint. <u>See</u> <u>id.</u> at 3 n.2.

The violations persisted. When the parties submitted revised exhibit lists and exhibit binders as ordered by the court, plaintiff's submissions failed to comply with the court's orders in several respects that the court outlined in its order of March 16. The court provided detailed instructions to Mr. Leventhal via telephone regarding areas of noncompliance. <u>See</u> Order dated Mar. 16, 2016. The court emphasized once again that it had

> issued multiple orders (including on 3/3/16, 3/4/16, and 3/9/16) and held multiple conferences (including on 3/9/16 and 3/15/16) regarding persistent issues with plaintiff's exhibits. The court will not tolerate any further delays or noncompliance with its orders and instructions. If plaintiff does not bring its materials into full compliance with the court's orders and instructions by noon tomorrow, the court will assess sanctions.

<u>Id.</u>

      2.    <u>Trial</u>

At approximately 8:30 a.m. on March 21—one hour before jury selection, and thereafter trial, was scheduled to commence—the court received a letter from Mr. Leventhal requesting an adjournment. The contents and timing of this letter are central to the instant motion and therefore warrant recitation here in full:

> Dear Judge Ross,
>
> I write on behalf of plaintiff to inform the Court that earlier this morning plaintiff's lead trial counsel's mother, Carol Nonnenmacher, passed away in her home in Staten Island. As such, plaintiff hereby requests that the trial scheduled to begin this morning be rescheduled to any date convenient for the Court and the defendants after April 3, 2016. Defendants' counsel, Andrew Lucas, indicated that the defendants "cannot consent" to plaintiff's request.
>
> Thank you for your consideration.

<u>See</u> Mot. to Adjourn Trial, Dkt. #102. The letter bears Mr. Leventhal's letterhead and signature.[5]
<u>Id.</u>

The parties and their trial counsel—excluding Mr. Nonnenmacher—appeared in court at the time jury selection was scheduled to commence. The court told Mr. Leventhal, "I'm sorry to hear about your colleague's mother. We're certainly not going forward today." Tr. of Mar. 21, 2016 Status Conference at 1. The court asked counsel for defendants their position on rescheduling the trial. They noted significant conflicts for their attorneys and witnesses if the court granted the full two-week adjournment requested by plaintiff's counsel and therefore asked to proceed as soon as possible. <u>Id.</u> at 1-2. They also requested that any additional costs borne by defendants for trial preparation be taxed to plaintiff. <u>Id.</u> at 1. Mr. Leventhal nonetheless insisted upon a two-week adjournment. <u>Id.</u> at 3. However, in light of the scheduling issues discussed at the conference, the court scheduled trial to commence in one week's time. <u>Id.</u> at 7.

At this conference, the court explicitly ordered that trial would begin on that date with or without Mr. Nonnenmacher's participation. Mr. Leventhal protested, "I'm not the plaintiff's trial attorney. Plaintiff has chosen Mr. Nonnenmacher. I think it's ridiculous that these city attorneys with a death of plaintiff's trial counsel would say that they would not consent." <u>Id.</u> at 6. He also "wonder[ed] if the media would be interested." <u>Id.</u> Mr. Leventhal's tone prompted the court to admonish him not to raise his voice when addressing the judge. <u>Id.</u> at 6. The court continued to address Mr. Leventhal:

> this was your case from the beginning. I am not going to adjourn it again. If you have any question as to whether or not Mr. Nonnenmacher is going – you have been with this case from the very beginning. You did all the depositions. You did all the discovery. You've done all the papers. As far as I'm concerned it is going forward

---

[5] When Mr. Leventhal represented this information to the court orally, he said the following: "[Mr. Nonnenmacher] called [me] at five this morning and informed [me] that his mom passed away at five this morning. I do not know the arrangements yet." Tr. of Mar. 21, 2016 Status Conference at 3.

next week. I do not believe Mr. Nonnenmacher will be unable to handle [the trial if not granted] a two week adjournment. I think a one week adjournment should be ample. But if there's a problem, I expect that you will go forward as trial attorney for your client.

Id. at 6-7. The court reiterated this instruction in a written order: "If Mr. Nonnenmacher - who first appeared as an attorney for plaintiff three weeks ago - is unable to proceed on that date, the court nonetheless expects trial to go forward with plaintiff's other attorneys of record." See Order dated Mar. 21, 2016.

Two days later, Mr. Leventhal moved this court for an immediate hearing regarding "an urgent matter that ha[d] just come to [his] attention." See Mot. for Hr'g, Dkt. #111. At the court's request, Mr. Leventhal provided additional information regarding this "urgent matter" in a document he captioned an "affidavit/declaration" in support of his motion. See Aff. in Supp. of Mot. for Hr'g, Dkt. #112, at 1. In that document, Mr. Leventhal asked the court to disqualify Mr. Nonnenmacher based on Mr. Leventhal's having discovered that Mr. Nonnenmacher's mother had not died. Id. He wrote, "At approximately 4:00 p.m. today, I learned from Mr. Nonnenmacher's wife that Mr. Nonnenmacher's mother had an accident Monday morning and is presently hospitalized." Id. Mr. Leventhal continued, "His wife also informed me at about the same time today that Mr. Nonnenmacher was being rushed to a hospital with an apparent heart attack or panic attack." Id.

The court held a conference the following morning. A significant portion of this court's comments at that conference is relevant to this motion and therefore reproduced here:

I was shocked to learn yesterday that—notwithstanding Mr. Leventhal's representations—Mr. Nonnenmacher's mother had in fact not passed away. I am deeply troubled that Mr. Nonnenmacher, an attorney of record who received electronic service of Mr. Leventhal's letter representing that his mother had died— did not correct this misrepresentation. My concerns are compounded by the fact that this is not the first time Mr. Nonnenmacher has sought a significant extension on a critical trial-related deadline based on representations that a member of his

family had died.

I will deal with Mr. Nonnenmacher, his disqualification as counsel, and appropriate discipline and sanctions, at another time.

For present purposes, I only need to reiterate the order that I entered on Monday that jury selection and trial will commence on March 28, 2016 at 9:30 a.m., with or without Mr. Nonnenmacher. I issued this order to Mr. Leventhal in oral and written form on Monday.

Nothing about the intervening events requires alteration of that order.

. . . .

Approximately one month ago Mr. Nonnenmacher sent a letter to the court indicating that Mr. Leventhal had retained him as trial counsel to handle the trial of this action. That was the first suggestion that Mr. Leventhal would not try his client's case. However, Mr. Leventhal did not withdraw as plaintiff's attorney at that time or limit his appearance in any way.

In summary, there is no reason whatsoever why Mr. Leventhal cannot try this case next week and, indeed, why he is not the attorney best-positioned to do so.

. . . .

As I have made clear previously, Mr. Leventhal, you must try this case on Monday if Mr. Nonnenmacher will not do so. I will not entertain any further excuses or delays.

You must understand that if you do not try this case on Monday, it will be dismissed for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

See Tr. of Mar. 24, 2016 Status Conference at 4-7.

Mr. Leventhal responded that he had never been sanctioned or threatened with sanctions.

Id. at 7. He apparently did not include the multiple times this court had already threatened

sanctions against him. Mr. Leventhal described his due diligence before engaging Mr.

Nonnenmacher and his understanding that Mr. Nonnenmacher did not require his assistance in

any way. Id. at 8-9. He described his co-counsel relationship with Mr. Nonnenmacher as

"enormously stressful" and acknowledged that there were "certainly some things over the last –

well, from when the first pretrial submissions were due and his submissions to the court that

gave me concern." Id. at 9-10. Yet, Mr. Leventhal said, "nothing rose to the level that I thought he would ever make a misrepresentation like he did to the court and it certainly calls into question other representations he's made to me and to the court." Id. at 9. He described Mr. Nonnenmacher as "an attorney who clearly is not fit to practice before this court," but insisted that "there were no signs" warning Mr. Leventhal of that fact. Id. at 10.

Mr. Leventhal also conceded that, despite this court's order two days earlier that trial would begin the following week with or without Mr. Nonnenmacher, he had not yet begun to prepare for trial. Id. at 10-11, 12 ("I have represented Mr. Martin from the inception of this case. But I have not prepared the case for trial."). He asked the court for "as much time as the court can give" to allow him to prepare for trial. Id. at 12. This court described his inaction in this regard as "inconceivable" in light of its prior orders, remarking that "[i]t was pretty clear what was going on." Id. at 11. The court declined to move the trial date yet again. Id. at 12.

Two days later, on the Saturday afternoon preceding the trial, plaintiff filed a stipulation of voluntary dismissal with prejudice of all claims against all defendants pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. See Dkt. #115. This court endorsed plaintiff's stipulation, retaining jurisdiction to adjudicate the motion for attorney's fees and sanctions that defendants indicated they planned to file. See Stipulation of Voluntary Dismissal, Dkt. #117, at 1; see also Defs.' Letter dated Mar. 26, 2016 ("Defendants respectfully advise the Court that they still intend to seek, at a minimum, costs associated with the time of the individual defendants and defense counsel in this matter.").[6]

---

[6] None of the parties dispute this court's jurisdiction to adjudicate the instant motion notwithstanding its endorsement of the stipulation for voluntary dismissal. See Schlaifer, 194 F.3d at 333 ("The District Court clearly had jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case.") (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)).

## C.      The Instant Motion for Attorney's Fees and Sanctions

The final chapter concerns the instant motion for attorney's fees and sanctions.

Defendants timely filed their motion and supporting materials on April 5. <u>See</u> Mot. for

Sanctions, Dkt. #119. Based on the allegations in that motion, described more fully below, the

court developed concerns regarding a possible conflict of interest between plaintiff and Mr.

Leventhal. It therefore made appointed counsel available to plaintiff if he chose to avail himself

of that option. <u>See</u> Notice dated Apr. 7, 2016. He did.

Plaintiff and Mr. Leventhal filed their respective oppositions to the instant motion. Mr.

Nonnenmacher did not. Instead, the court received a letter purportedly on his behalf from Jesse

M. Young, Esq. <u>See</u> Letter dated Apr. 11, 2016, Dkt. #124. Mr. Young is not counsel of record

in this case. He stated in his letter that he works as an associate at a law firm where Mr.

Nonnenmacher was, until recently, a partner. <u>Id.</u> Mr. Young reported the following:

> Today, I received a call from Mr. Nonnenmacher and he informed me that he was
> currently hospitalized and had been for some time. He said that he had very limited
> access to a telephone and no access to a computer. He further stated that he expected
> that he would be released in a few days. He asked me to write to the Court to request
> a two week extension for his time to respond to defendants' motion for sanctions.
> Last week I also received a call from Mr. Nonnenmacher's wife informing me that
> he was hospitalized.

<u>Id.</u> His letter did not provide any specifics regarding where Mr. Nonnenmacher was, how he

could be reached by the court, or why he waited until the final business day before the deadline

to seek an extension of a deadline this court set nearly two weeks prior.

The court contacted Mr. Young via telephone and requested additional information. He

said that Mr. Nonnenmacher's wife had represented to him, during a conversation the week

prior, that Mr. Nonnenmacher was hospitalized in Morristown, NJ at Morristown Memorial

Hospital. The court subsequently contacted that institution, apparently renamed Morristown

Medical Center, and was advised by a representative that no one with the last name "Nonnenmacher" was presently a patient at that facility. See Order to Show Cause, Dkt. #125, at 1-2. The court asked Mr. Young, as well as Mr. Leventhal, for every phone number, email address, and address at which Mr. Nonnenmacher might conceivably be reached. However, efforts to reach him through any of those means were unsuccessful. Accordingly, the court issued an order to show cause requiring Mr. Nonnenmacher to contact the court in writing by noon on April 12 to advise the court of his whereabouts and provide reliable contact information. Id. at 2. The court stated in its order that unless or until it received that information, it found no basis to grant the extension Mr. Nonnenmacher sought. Id. Mr. Nonnenmacher never responded to the order to show cause.

The court subsequently held a telephonic status conference—which Mr. Nonnenmacher did not attend—concerning matters raised by the instant motion and oppositions thereto. See Scheduling Order dated Apr. 14, 2016. During this status conference, the court discussed a claim of attorney-client privilege advanced by both plaintiff and Mr. Leventhal. In support of his opposition to the instant motion, Mr. Leventhal submitted a declaration providing limited information regarding the circumstances that gave rise to the voluntary dismissal. Decl. of Jason Leventhal ("Leventhal Decl."), Dkt. #128. According to Mr. Leventhal, he "discovered new information that warranted filing a stipulation of voluntary dismissal" when he met with plaintiff in his office on March 25 to prepare for trial. Leventhal Decl. ¶ 24. He stated in his declaration that "[t]he information that warranted the withdrawal of plaintiff's claims did not implicate the facts that formed the basis of plaintiff's claims." Id. ¶ 25. In his brief, he contended that "[t]he reasons for filing the stipulation are subject to attorney-client privilege." Leventhal's Mem. in Opp'n to Mot. for Sanctions, Dkt. #127, at 6. Plaintiff made a similar assertion in his filing. Pl.'s

Mem. in Opp'n to Mot. for Sanctions, Dkt. #126, at 21. This court ordered supplemental briefing

on that matter, <u>see</u> Order dated Apr. 14, 2016, and ultimately directed plaintiff to submit an <u>ex

parte</u> affidavit for <u>in camera</u> inspection, <u>see</u> Order dated Apr. 20, 2016.

Mr. Nonnenmacher, apparently unaware that this court had adjourned the sanctions

hearing due to the need for supplemental briefing on the claim of attorney-client privilege,

appeared in court on April 18. This court described his appearance on that date as follows:

> He represented to this court that he had been unable to respond to the motion due
> to his intervening hospitalization. [Tr. of Apr. 18, 2016 Status Conference] at 4, 6-
> 7. He further represented that he had retained counsel to defend against the pending
> motion. <u>Id.</u> at 2, 8. The court set a schedule for Mr. Nonnenmacher to oppose the
> pending motion. <u>Id.</u> at 9-10. Mr. Nonnenmacher also indicated that sensitive
> information concerning his mother's health would be relevant to his opposition and
> requested that such information be sealed. <u>Id.</u> at 11-13. The court directed Mr.
> Nonnenmacher to submit a letter regarding that request, and he agreed to submit
> such a letter later that day. <u>Id.</u> at 11-12.

<u>See</u> Order dated Apr. 19, 2016, Dkt. #139, at 1-2. An attorney entered an appearance for Mr.

Nonnenmacher later that day and immediately requested an extension of deadlines set at the

status conference—notwithstanding this court's express order that any counsel retained by Mr.

Nonnenmacher "must be prepared to meet existing deadlines related to the pending sanctions

motion." <u>See</u> Order dated Apr. 18, 2016.

This court reluctantly granted modest extensions to the deadlines for Mr. Nonnenmacher

to file his letter on sealing as well as his opposition to the instant motion. <u>See</u> Scheduling Order

dated Apr. 18, 2016. Regarding Mr. Nonnenmacher's request to seal certain medical records

relating to his and his mother's hospitalizations, the court held that such information was

irrelevant to resolution of the instant motion. <u>See</u> Order dated Apr. 19, 2016, Dkt. #139, at 2-4.

As the court explained,

> The pending sanctions motion does not address the period of time during which Mr.

> Nonnenmacher claims to have been hospitalized. Mr. Nonnenmacher acknowledges as much, writing that "the records themselves do not bear on the truth or innocence of Mr. Nonnenmacher." Although Mr. Nonnenmacher nonetheless proposes to submit them for <u>in camera</u> inspection "solely to satisfy what Mr. Nonnenmacher believes to be his obligation of candor to the court," this court does not require them for that purpose or see how these materials bear upon the sanctions motion it must adjudicate.

<u>Id.</u> at 3-4 (internal citations omitted). Accordingly, this court denied as moot his request to submit those records under seal. <u>Id.</u> at 4.

As his opposition to the instant motion, Mr. Nonnenmacher filed a declaration under penalty of perjury. <u>See</u> Decl. of John Joseph Nonnenmacher ("Nonnenmacher Decl."), Dkt. #142. In his declaration, Mr. Nonnenmacher affirms that he agreed to act as trial counsel in the underlying litigation. <u>Id.</u> ¶¶ 1, 3.

With respect to the alleged misrepresentation, Mr. Nonnenmacher states that he learned "[i]n the early morning hours of March 21, 2016" that "[his] mother's condition had worsened and death was imminent." <u>Id.</u> ¶ 4. He further attests, "I was in bad shape, but that is an understatement." <u>Id.</u> According to his declaration, Mr. Nonnenmacher called Mr. Leventhal "around 5:00 a.m." and "informed him during a hysterical conversation, that [his] mom was about to die and [he] had to get to the hospital." <u>Id.</u> ¶ 5. The declaration continues, "Mr. Leventhal's apparent understanding that [Mr. Nonnenmacher's mother] was already dead would have been clarified had [Mr. Nonnenmacher] not become so severely ill." <u>Id.</u> ¶ 6. Mr. Nonnenmacher describes his severe illness as "the obvious trauma of [his mother's imminent death]" as well as "extreme anxiety, emotional distress, and severe medical problems that [he] intend[s] to document in exhibits at the upcoming evidentiary hearing." <u>Id.</u> ¶ 7. However, according to the declaration, Mr. Nonnenmacher was not admitted to a hospital until two days later. <u>Id.</u> ¶ 8. He states that he remained at that facility for approximately one week, after which

he was "transferred to several other facilities for care, finally being released on April 16, 2016." Id. In short, Mr. Nonnenmacher argues that he was not in a position to correct Mr. Leventhal's misunderstanding.

## LEGAL STANDARDS

Defendants provide five independent grounds for sanctions and attorney's fees. They include Rules 11(c), 16(f), and 54(d)(2)[7] of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 1927 and 42 U.S.C. § 1988. Defendants also invoke this court's inherent authority.

### A.      Rule 11(c) of the Federal Rules of Civil Procedure

Rule 11 provides that an attorney who presents "a pleading, written motion, or other paper" to the court thereby makes certain certifications "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). Those certifications include, inter alia, that the document "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Id. 11(b)(1), (b)(3). A court may sanction an attorney, law firm, or party who has violated that rule by signing the offending document or having responsibility for its being signed. Id. 11(c)(1). The standard for imposing sanctions under this rule is objective unreasonableness. Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000).

### B.      Rule 16(f) of the Federal Rules of Civil Procedure

Rule 16 governs pretrial conferences, scheduling, and management. With respect to these

---

[7] This rule "establishes a procedure for presenting claims for attorneys' fees." Fed. R. Civ. P. 54(d)(2) advisory committee's note to 1993 amendment. It does not, as defendants suggest, provide an independent ground for sanctions or attorney's fees.

pretrial matters, Rule 16(f) empowers the court to impose sanctions when "a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(A)-(C). The court need not find that a party or litigant acted in bad faith as a prerequisite to imposing sanctions under Rule 16(f); "[r]ather, the fact that a party violated a pretrial order is sufficient to allow a Rule 16 sanction." Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 368 (E.D.N.Y. 2013) (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1531 (3d ed. 1998)). The purpose of this sanctions provision is "to encourage forceful judicial management." Fed. R. Civ. P. 11, advisory committee notes, 97 F.R.D. 165, 213 (1983). When a party or its attorney engages in conduct proscribed by Rule 16(f), "the court may issue any just orders." Fed. R. Civ. P. 16(f)(1).

Rule 16(f) also includes a fee-shifting provision requiring that the court "order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Id. 16(f)(2). This rule requires the court to award such expenses "[i]nstead of or in addition to any other sanction" it imposes under this rule. Id.

## C.     28 U.S.C. § 1927 and the Court's Inherent Authority

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Similarly, under its inherent authority to control the proceedings that take place before it, any

federal court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)).

Under either ground for sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer, 194 F.3d at 336). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Sierra Club v. U.S. Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985). With respect to the first requirement, a claim is entirely without color when it lacks any basis in law or fact. Id. (citing Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam)). With respect to the second requirement, the bad faith standard is interpreted stringently. Eisemann, 204 F.3d at 396. "[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Schlaifer, 194 F.3d at 336 (quoting Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996)). A determination that a party or attorney acted in bad faith demands a "high degree of specificity in the factual findings" of the district court. Dow Chem. Pacific Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986) (internal quotation marks and citations omitted).

These grounds for imposing sanctions materially differ only insofar as sanctions under 28 U.S.C. § 1927 are limited to attorneys or others authorized to practice before the courts. Sanctions imposed pursuant the court's inherent authority are not so limited; they may be imposed against an attorney, a party, or both. Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (describing this as "the only meaningful difference between an award made under § 1927

and one made pursuant to the court's inherent power").

**D.  42 U.S.C. § 1988**

In an action pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "An award under § 1988 is available to the prevailing party and is charged against the losing party, not his attorney." Oliveri, 803 F.2d at 1272.

The standard governing fees under this statute depends on whether the "prevailing party" is the plaintiff or the defendant.[8]  The standard for the latter, applicable here, is more restrictive. It allows the defendant to recover only upon a finding "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)). This standard focuses on the bona fides of the plaintiff's action; under 42 U.S.C. § 1988, the plaintiff's motivations are irrelevant. See Davidson v. Keenan, 740 F.2d 129, 133 (2d Cir. 1984).

**DISCUSSION**

"For purposes of determining whether to impose sanctions, we analyze the conduct of parties and their attorneys separately." Ransmeier, 718 F.3d at 71. Because "[t]he rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions," this court must consider whether any conduct on the part of plaintiff himself warrants sanctions. Id. (quoting Gallop v. Cheney, 660 F.3d 580, 584 (2d Cir. 2011), order vacated on other grounds, 667 F.3d 226 (2d Cir. 2012), as amended (Feb. 3, 2012)). In determining whether to impose

---

[8]  Neither party disputes that defendants qualify as "prevailing parties" within the meaning of the statute. See Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 165 (2d Cir. 2014) (rejecting contention that dismissal of an action with prejudice deprives a defendant of "prevailing party" status).

sanctions against plaintiff, this court is mindful that

> clients do not share the same ethical obligations that their attorneys owe this Court. Furthermore, although clients are responsible for dictating the ultimate goals of a lawsuit, see ABA Model R. of Professional Conduct, R. 1.2, we recognize that attorneys often have considerable latitude in the exercise of their professional judgment to design litigation strategies to achieve those goals. A client should not be punished when an attorney, without the client's approval, exercises that responsibility unwisely.

Ransmeier, 718 F.3d at 71 (some internal citations omitted).

## A.      Plaintiff Isa Martin

Defendants argue that sanctions against plaintiff are warranted under Rules 11(c) and 16(f) of the Federal Rules of Civil Procedure as well as this court's inherent authority. Defendants also contend that they are entitled to attorney's fees under 42 U.S.C. § 1988 because plaintiff's suit was meritless. The court considers these arguments in turn, starting with the request for a fee award.

### 1.      Award of attorney's fees under 42 U.S.C. § 1988

To award attorney's fees to defendants under 42 U.S.C. § 1988, this court must find "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes, 449 U.S. at 14 (quoting Christiansburg, 434 U.S. at 421). Defendants argue that this court may infer that plaintiff's action was meritless based on the timing of plaintiff's stipulation of voluntary dismissal. According to defendants, the voluntary dismissal is tantamount to a concession that the action was meritless. Defendants seek to prove as much through an evidentiary hearing if the court declines to make that inference based on the present record. Defendants also point to apparent contradictions in the record concerning the cause of plaintiff's injuries as well as plaintiff's use of oxycodone. See Mem. in Supp. of Mot. for Sanctions, Dkt. #120, at 2-3 (citing Exs. A-B to Decl. of Andrew Lucas in Supp. of Mot. For

Sanctions, Dkt. #121). They argue that these contradictions expose plaintiff's action as frivolous.

In response, plaintiff points out that defendants sought summary judgment on fewer than half of the causes of action alleged in plaintiff's amended complaint. Pl.'s Mem. in Opp'n to Mot. for Sanctions, Dkt. #126, at 7. According to plaintiff, failing to file a dispositive motion with respect to all causes of action in the amended complaint precludes defendants from now arguing that plaintiff's action lacked foundation. Plaintiff also claims that defendants have fallen short of their burden to show that his action was frivolous because they have done nothing more than speculate that the voluntary dismissal reflected plaintiff's acknowledgement that his claims lacked merit. Finally, plaintiff argues that the apparent contradictions identified by defendants in their motion—of which defendants were aware and on the basis of which they could have sought summary judgment—were hardly fatal to plaintiff's case. Indeed, plaintiff argues that he could and would have provided credible explanations through his trial testimony for these apparent contradictions concerning the cause of plaintiff's injuries as well as his use of oxycodone.

As an initial matter, this court is unpersuaded by plaintiff's argument that defendants are somehow barred from receiving an award of attorney's fees under 42 U.S.C. § 1988 because they did not move for summary judgment on all of plaintiff's claims. Plaintiff has not provided any authority to support this categorical bar, and this court declines to impose one. Plaintiff's argument seems to the court to be, at best, a misguided corollary to the common practice of denying attorney's fees to the defendant in cases where the plaintiff has survived a dispositive motion. See Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Statutory Attorney's Fees § 10.01[C] (2016 Supplement) ("In many cases, the fact that the plaintiff's claims initially survived a motion to dismiss or for summary judgment or a directed verdict was deemed sufficiently suggestive of merit to compel a finding that the plaintiff's claims, though

25

ultimately unsuccessful, were not frivolous."); <u>see</u> <u>id.</u> n.34 (collecting cases). However, the fact that many courts deny attorney's fees where a defendant loses a dispositive motion does not compel courts to do so where a defendant fails to make one.

The court also rejects defendants' contention that apparent inconsistencies on the face of the record suffice to find frivolousness, unreasonableness, or lack of foundation as required under 42 U.S.C. § 1988. In rejecting this contention, the court agrees with plaintiff that these apparent inconsistencies could have been addressed and explained by plaintiff at trial. Although they may have damaged plaintiff's credibility, or diminished his damages, these inconsistencies did not render his action meritless.

The critical question for this court—unaddressed in the numerous submissions it has received from the parties—is how the court should conduct the inquiry required by 42 U.S.C. § 1988. Because this court cannot find, based on the record presently before it, that plaintiff's action was meritless, the question becomes whether the court can and should consider additional information to make that determination.

A careful survey of the relevant case law demonstrates that courts typically make this determination based on information apparent on the face of the record—meaning information already available to the court at the time the motion for fees is brought. Pertinent considerations can include whether the plaintiff established a <u>prima</u> <u>facie</u> case, whether the defendant offered to settle, and whether the trial court dismissed the case prior to trial. <u>See</u> Martin A. Schwartz & John E. Kirklin, <u>Section 1983 Litigation: Statutory Attorney's Fees</u> § 10.01[C] (2016 Supplement). In addition, prevailing defendants are likely to receive fee awards in cases of clear jurisdictional deficiencies or unambiguous case law, failure by plaintiff to produce any evidence in support of his claims, or related proceedings in another forum with preclusive effect. <u>Id.</u>

Defendants have not argued, and this court does not find, that any of these considerations warrant a finding of frivolousness here.

Defendants instead argue that "[i]t is difficult to reconcile the discovery of such new and crucial information with the amount of time and preparation put into this case over many years and multiple trial dates." <u>See</u> Mem. in Supp. of Mot. for Sanctions, Dkt. #120, at 14. They further argue that whatever Mr. Leventhal claims to have discovered immediately before the commencement of trial could and should have been discovered sooner. Defendants ask this court for a chance to prove that these inferences are warranted, apparently by eliciting sworn testimony from plaintiff and his lawyers at an evidentiary hearing.

This court's response is twofold. First, this court is unwilling to find that plaintiff's suit was frivolous based on inference alone. As any seasoned litigator well knows, the final stretch of trial preparation can lead to surprises. This is true even for litigators who have acted competently and diligently throughout the pendency of the litigation. These surprises may or may not be happy ones. They may or may not relate to the merits. They may or may not have been discoverable at an earlier point. In extreme cases, they may prompt the litigator to advise his or her client to voluntarily dismiss claims—and to withdraw from representation if the client rejects such advice. For these reasons, it cannot be said that a voluntary dismissal—no matter how late in the litigation, and no matter how frustrating to the adversary—necessarily reflects a judgment regarding the merits of the suit or automatically warrants sanctions.[9]

---

[9] A helpful discussion of these principles is found in <u>New York Stock Exch., Inc. v. Ghary</u>, No. 00-CV-5764, 2003 WL 68038 (S.D.N.Y. Jan. 8, 2003). There, plaintiff's counsel contacted defendants' counsel three days before trial was scheduled to begin and stated that plaintiff had decided to move for voluntary dismissal with prejudice. <u>Id.</u> at *1. The court granted that motion on the day trial was scheduled to begin. <u>Id.</u> Defendants subsequently moved for sanctions under Rule 11 as well as a fee award provision in the statute applicable to plaintiff's claims, arguing— based largely upon the eve-of-trial voluntary dismissal—that plaintiff's claims lacked foundation from the start. <u>Id.</u> at *2. In discussing the propriety of sanctions under Rule 11, the court rejected the argument that motions for

Second, defendants have not provided any authority for their implicit argument that this court should engage in the more searching inquiry they envision. Indeed, all of the cases cited by defendants involve circumstances where the frivolousness of the plaintiff's suit was readily apparent to the court without resort to additional fact-finding. See Carrion v. Yeshiva Univ., 535 F.2d 722, 728 (2d Cir. 1976) (upholding fee award where trial judge found after bench trial that plaintiff deliberately perjured herself in light of contradictory trial testimony from other witnesses and prior inconsistent statements by plaintiff); Carrion v. City of New York, No. 01-CV-2255, 2003 WL 22519438, at *1 (S.D.N.Y. Nov. 4, 2003) (awarding fees where trial judge found after jury trial that plaintiff failed "to produce one shred of evidence that the arrest at issue was not based on probable cause"); Delancett v. Vill. of Saranac Lake, 986 F. Supp. 126, 129 (N.D.N.Y. 1997) (awarding fees where trial judge found in deciding summary judgment motion that plaintiff "failed to produce one scintilla of evidence which could color a § 1983 claim" and consented to dismissal at oral argument); Puglisi v. Underhill Park Taxpayer Ass'n, 964 F. Supp. 811, 815-16 (S.D.N.Y. 1997) (awarding fees where trial judge found that plaintiff contradicted his complaint and conceded his claims at his deposition); Kappenberger v. Oates, 663 F. Supp. 991, 992 (S.D.N.Y. 1987) (awarding fees where trial judge found after eight-day jury trial that plaintiff's "recital of the facts at trial was completely at odds with the allegations set forth in his complaint"); Kane v. City of New York, 468 F. Supp. 586, 587, 593-93 (S.D.N.Y.), aff'd, 614

---

voluntary dismissal at that late stage are necessarily suspect:

> The fact that plaintiff decided to move for voluntary dismissal before trial does not change the court's determination, nor should it. First, the court is simply unconvinced that plaintiff's moving for voluntary dismissal was anything but a legitimate tactical decision. Second, even if the court could infer bad faith from plaintiff's action, it would be contrary to the law in the Second Circuit to analyze plaintiff's earlier pleadings in light of this later action, for that would be allowing hindsight to skew the court's judgment.

Id. (citing United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991)).

F.2d 1288 (2d Cir. 1979) (awarding fees where trial judge found claims asserted identical to those asserted in twelve prior proceedings, including four in the same court).[10]

Even if this court were to assume that it is appropriate to explore the motivation for plaintiff's voluntary dismissal through an evidentiary hearing, plaintiff claims that his motivation is shielded by attorney-client privilege. To test the validity of that claim, this court ordered plaintiff to provide certain information about the circumstances surrounding his dismissal to the court ex parte for in camera inspection. See Order dated Apr. 20, 2016. On reviewing that information, the court issued an order finding plaintiff's claim of attorney-client privilege valid. See Op. & Order, Dkt. #153. That order also warrants denial of an evidentiary hearing regarding the bona fides of plaintiff's claims. Although this court does not hold that a plaintiff's valid claim of attorney-client privilege necessarily deprives a defendant of an evidentiary hearing, that conclusion is compelled here because the only matter relevant to fees on which defendants seek an evidentiary hearing is one shielded by attorney-client privilege. See Mem. in Supp. of Mot. for Sanctions, Dkt. #120, at 13.

Accordingly, based on the information this court may properly consider, it cannot conclude that plaintiff's action was frivolous, unreasonable, or without foundation. Defendants' motion for attorney's fees pursuant to 42 U.S.C. § 1988 is therefore denied.

---

[10] That said, the more searching inquiry defendants envision is not without precedent. This court is aware of at least one instance in which a federal district court pulled back the curtain after the show was over. In Blue v. U.S. Dep't of Army, 914 F.2d 525 (4th Cir. 1990), the district court whose order on sanctions was appealed had "conducted extensive sanctions hearings to determine the reasons why plaintiffs had abandoned their claims and whether the claims were frivolous." Id. at 532. The district court made a finding that the abandoned claims were frivolous, albeit not in the context of a motion for attorney's fees under 42 U.S.C. § 1988. However, even in that case, the court of appeals—in affirming the order of the district court in part—relied largely on information on the face of the record pertaining to defects in plaintiffs' claims that their testimony at the sanctions hearings merely confirmed.

2.     Sanctions under Rules 11(c) and 16(f) of the Federal Rules of Civil Procedure as well as this court's inherent authority

Defendants also seek sanctions against plaintiff under Rules 11(c) and 16(f) of the Federal Rules of Civil Procedure as well as this court's inherent authority. Defendants do not identify what specific acts or omissions on the part of plaintiff warrant sanctions on these grounds. The court agrees with plaintiff that sanctions against him are not warranted.

Plaintiff claims that Rule 11(c), which provides for sanctions based on violations of Rule 11(b), applies only to attorneys. Plaintiff is incorrect. Rule 11(c) expressly provides for sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The better argument for opposing sanctions under that rule is that only parties who violate the rule or are responsible for violations face sanctions. Defendants have not identified the specific "pleading, written motion, and other paper" that ran afoul of Rule 11(b), much less explained how plaintiff was responsible for any violation. This court therefore denies sanctions against plaintiff under Rule 11(c).

Plaintiff also resists sanctions under Rule 16(f), arguing that defendants' motion "is devoid of any claim that [plaintiff] personally failed to appear, failed to participate or failed to obey an order." Pl.'s Mem. in Opp'n to Mot. for Sanctions, Dkt. #126, at 2. This court agrees. Although the court has little trouble finding that Mr. Nonnenmacher and Mr. Leventhal violated Rule 16, as discussed below, defendants have not attempted—much less succeeded—to locate any acts or omissions on the part of plaintiff that contributed to these Rule 16 violations. This court is mindful that, absent such a showing, plaintiff must not pay for the sins of his lawyers. Ransmeier, 718 F.3d at 71. Accordingly, sanctions against plaintiff under Rule 16(f) are denied.

Plaintiff does not specifically address the motion for sanctions against him based on this

court's inherent authority. However, this court likewise denies sanctions on that basis. As discussed above, sanctions on that basis require "that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" <u>Eisemann</u>, 204 F.3d at 396 (quoting <u>Schlaifer</u>, 194 F.3d at 336). This court already rejected the contention that plaintiff's action was frivolous, unreasonable, or without foundation. For the same reasons, this court cannot find that defendants have met the first requirement of showing that plaintiff's claims were entirely without color. Because defendants cannot meet this requirement, the court need not consider whether plaintiff brought his claims in bad faith. The court declines to sanction plaintiff through an exercise of its inherent authority.

## B.       Attorneys Jason Leventhal and John Nonnenmacher

Defendants argue that sanctions against Mr. Leventhal are warranted under Rules 11(c) and 16(f) of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 1927 and this court's inherent authority. The motion for sanctions against Mr. Leventhal focuses primarily on two aspects of his conduct in the underlying lawsuit. First, defendants allege that whatever caused Mr. Leventhal to advise his client to voluntarily dismiss his claims should have been discovered and acted upon sooner. Second, defendants question why and how Mr. Leventhal conveyed misinformation about the death of Mr. Nonnenmacher's mother to defendants and the court. <u>See</u> Mem. in Supp. of Mot. for Sanctions, Dkt. #120, at 13.

Defendants cite the same legal grounds in arguing for sanctions against Mr. Nonnenmacher. Apart from a declaration submitted under penalty of perjury, Mr. Nonnenmacher, who is represented by counsel, has submitted no further opposition to the instant motion.

The court considers these grounds for sanctions against Mr. Nonnenmacher and Mr. Leventhal in turn, analyzing the conduct of these attorneys separately.

1.     Sanctions under Rule 11(c) of the Federal Rules of Civil Procedure

In the context of sanctions under Rule 11(c), the question is whether Mr. Leventhal made or caused a representation to the court that advocated a baseless legal or factual position or had an improper purpose. See Fed. R. Civ. P. 11(b)(1)-(4). The court concludes that he has not.

Had the court concluded that plaintiff's action lacked merit, the court would likely have been justified in finding that certain pleadings, motions, or papers signed by Mr. Leventhal lacked the certifications that attended his signature. But the court did not reach that conclusion. Without it, the court cannot locate—and the defendants have not identified—any specific representations by Mr. Leventhal that violate Rule 11(b).

The court also declines to sanction Mr. Leventhal based on his written and oral representations to the court that Mr. Nonnenmacher's mother had died. On the morning of March 21, Mr. Leventhal wrote and filed a letter "to inform the Court that earlier this morning plaintiff's lead trial counsel's mother, Carol Nonnenmacher, passed away in her home in Staten Island." Mot. to Adjourn Trial, Dkt. #102, at 1. That information proved untrue. However, there is no evidence that Mr. Leventhal knew or should have known that the information was untrue when he conveyed it to the court. Nor is there any indication that Mr. Leventhal presented that information to the court for any improper purpose. Even Mr. Nonnenmacher suggests that the misrepresentation resulted from an apparent misunderstanding on Mr. Leventhal's part and not a deliberate falsehood. Nonnenmacher Decl. ¶ 6.

Nothing in the present record contradicts Mr. Leventhal's assertions in his declaration regarding the events that precipitated his writing of that letter. These assertions include that Mr.

Nonnenmacher called him early on the morning of March 21; that Mr. Leventhal understood, based on their conversation, that Mr. Nonnenmacher's mother had died; that Mr. Leventhal promptly notified opposing counsel and this court; and that it was only two days later that he became suspicious that Mr. Nonnenmacher's mother had died when he learned that, although Mr. Nonnenmacher was not returning his calls, Mr. Nonnenmacher had been at the office. Leventhal Decl. ¶ 18-22. Mr. Leventhal immediately acted on this suspicion by retaining a private investigator and reporting the results of that investigation to this court. Id. ¶¶ 22-23. Defendants have not identified any reason to discredit these assertions or any basis to examine them through an evidentiary hearing. Under these circumstances, the court cannot find that Mr. Leventhal violated Rule 11(c) in conveying information about the supposed death of Mr. Nonnenmacher's mother to the court.

Defendants also argue that Mr. Nonnenmacher's misrepresentation that his mother had died warrants sanctions under Rule 11(c). Defendants do not identify a specific "pleading, written motion, and other paper" signed by Mr. Nonnenmacher that violates Rule 11(b). Accordingly, defendants' argument appears to rest on the claim that Mr. Nonnenmacher is otherwise responsible for a violation of Rule 11(b).

This court has already ruled that Mr. Leventhal's representations to the court about the death of Mr. Nonnenmacher's mother do not violate Rule 11(b). Mr. Leventhal, the proponent of the statement that Mr. Nonnenmacher's mother had died, complied with Rule 11(b)'s reasonable inquiry requirement. Lacking a violation of Rule 11(b), this court cannot impose sanctions on Mr. Leventhal, Mr. Nonnenmacher, or anyone else. That is so because sanctions under Rule 11(c) are available only "[i]f . . . the court determines that Rule 11(b) has been violated." Fed. R.

Civ. P. 11(c).[11]

      2.      Sanctions under Rule 16(f) of the Federal Rules of Civil Procedure

Defendants also move for sanctions against Mr. Leventhal and Mr. Nonnenmacher under Rule 16(f) of the Federal Rules of Civil Procedure. Sanctions are appropriate under that rule when an attorney "(A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). A finding of bad faith on that attorney's part is not required. All that is needed is a violation of a scheduling or other pretrial order. See Mahoney, 290 F.R.D. at 368. Violations in this case abound.

By this court's tally, at least six violations of Rule 16 described above are attributable to Mr. Nonnenmacher and Mr. Leventhal—entirely apart from any violations of court orders committed by Mr. Nonnenmacher after the action was voluntarily dismissed. This court finds that plaintiff's counsel: (1) violated this court's scheduling order of February 19, requiring submission of the joint pretrial order by February 23, because they did not exchange materials with counsel for defendants that would enable either party to meet that deadline; (2) violated this court's scheduling order of February 23, for the same reason; (3) violated numerous orders (incorporating this court's Individual Practices and Rules) regarding the deadline for pretrial submissions because they did not complete several components of the joint pretrial submission for which plaintiff's counsel was responsible; (4) violated this court's scheduling order of March 3, because they did not timely submit plaintiff's exhibits as directed; (5) violated this court's

---

[11] In reaching this conclusion, the court does not make any findings regarding Mr. Nonnenmacher's credibility in claiming that the misrepresentation that reached the court was the product of confusion rather than deliberate falsehood on his part. Nor does this court make findings regarding his credibility in claiming earlier in the litigation that his uncle had died, or claiming later in the litigation that he was hospitalized. These are all matters this court encourages the disciplinary committee to examine, as explained below.

scheduling order of March 4, because they again did not submit plaintiff's exhibits as directed;

and (6) appeared substantially unprepared to participate in the pretrial conference on March 9

because they did not bring any of plaintiff's exhibits or prepare objections to the court's

proposed jury charge.[12]  In addition, the court finds that Mr. Nonnenmacher violated this court's

scheduling order of March 3, because he did not provide the court with a working telephone

number as directed.

Plaintiff's attorneys failed to comply with pretrial orders with considerable frequency and

persistence. Their non-compliance with court orders prompted this court to threaten sanctions—a

threat this court does not take lightly—on multiple occasions in a matter of weeks. Their

disobedience of court orders was enormously disruptive to this court's management of its docket.

The court described the extent and effect of their noncompliance as follows:

> As evidenced by the last twelve pages of the docket in this matter, the court has
> been unfairly inconvenienced by the conduct of plaintiff's counsel over the past
> several weeks. No doubt the city has been much more inconvenienced and
> prejudiced by their conduct. Plaintiff's counsel's conduct—which is well
> documented on the docket—has included blatant disregard and repeated violation
> of court-ordered deadlines. It has prompted this court on multiple occasions, and in
> both written and oral orders, to threaten sanctions against plaintiffs' counsel. The
> court has been forced, on account of plaintiff's conduct, to excuse jurors called for
> the original trial date, to call jurors for the rescheduled trial date, and to completely
> clear its calendar for three separate weeks based on the three times the trial date has
> now changed to accommodate plaintiff's counsel. Likewise, the schedules of
> defendants, their lawyers and their witnesses—including numerous medical
> professionals—have been disrupted by this conduct. This conduct is unfair to the
> court, unfair to the defendants, and unfair to the many litigants before this court
> who require scarce judicial resources that have been squandered by plaintiff's
> counsel's conduct.

---

[12]  These violations of explicit court orders distinguish this case from Salahuddin v. Harris, 782 F.2d 1127 (2d Cir.
1986), where the Second Circuit reversed the order of the district court imposing sanctions under Rule 16(f). In
Salahuddin, the district court imposed sanctions under that rule for violations of unidentified explicit and implicit
orders. Id. at 1133. This case differs in meaningful respects. First, unlike in Salahuddin, this court is not imposing
the severe sanction of dismissing plaintiff's action. Second, this court has identified specific and explicit court
orders violated by Mr. Leventhal and Mr. Nonnenmacher.

Tr. of Mar. 24, 2015 Status Conference at 6-7.

The trouble is whom to blame for this conduct. Mr. Leventhal has consistently pointed the finger at Mr. Nonnenmacher, arguing that Mr. Nonnenmacher's retention as lead trial counsel in the final month of this five-year litigation makes him responsible for any violations of court orders that postdate his retention. This court is not entirely unsympathetic toward Mr. Leventhal's position. Mr. Leventhal expressed frustration regarding Mr. Nonnenmacher's conduct virtually from the start. According to Mr. Leventhal, he understood Mr. Nonnenmacher would act as lead trial counsel, Leventhal Decl. ¶ 11; he witnessed Mr. Nonnenmacher taking active steps to prepare for trial, id. ¶ 15; he was repeatedly assured by Mr. Nonnenmacher that he was prepared to conduct the trial, id. ¶ 14; and he attempted at various points to assist Mr. Nonnenmacher notwithstanding the latter's failure to request assistance, id. ¶ 13.

But Mr. Leventhal's frustrations do not excuse his conduct. Mr. Leventhal has exhibited a remarkably cavalier attitude toward his obligations as counsel of record in this matter. He has both implicitly and explicitly argued that the retention of Mr. Nonnenmacher absolved him of any responsibility for the many issues that followed—an argument this court rejected out of hand. See, e.g., Tr. of Mar. 4, 2016 Status Conference at 2-8 (instructing Mr. Leventhal no fewer than five times, "you are responsible" or "you are still responsible" or "it is your responsibility," in response to his litany of excuses for failure by plaintiff's counsel to comply with court orders). Mr. Leventhal never sought to withdraw as plaintiff's attorney or to otherwise limit his appearance in this case. See Civil Rule 1.4 of the Local Rules of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule __") ("An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the

36

Court granted by order."); see also Rule 1.2(c) of the Rules of Professional Conduct of the New York State Unified Court System ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, the client gives informed consent and where necessary notice is provided to the tribunal and/or opposing counsel.").

In light of that fact, Mr. Leventhal should have recognized and remedied the manifest and manifold consequences of his decision to involve an attorney who was plainly unprepared to meet this court's deadlines and obey its orders. It strikes the court that the significant time and resources Mr. Leventhal invested in pointing fingers at the trial counsel he selected would have been better spent advocating for his client, especially given that he was the attorney best positioned to do so. See Tr. of Mar. 24, 2016 Hr'g at 4-7 (describing Mr. Leventhal's history of active involvement in prosecuting plaintiff's claims).[13] Mr. Leventhal participated in every status and pretrial conference before this court, served as this court's only point of contact for the frequent periods when Mr. Nonnenmacher could not be reached, and was expressly warned that he remained responsible for ensuring plaintiff's compliance with court orders. There is no question that Mr. Leventhal bears responsibility for the violations this court has found.

Mr. Nonnenmacher has likewise provided a litany of excuses for his noncompliance with court orders. They include that Mr. Nonnenmacher's uncle had died, that Mr. Nonnenmacher left a firm with which he was previously associated, that Mr. Nonnenmacher joined a new firm, that his responsibilities at his new firm required his attendance in court on another matter, and that he entrusted filing of certain materials to an unnamed individual who did not follow through.

---

[13] Mr. Leventhal has asserted in a sworn declaration that he represented plaintiff in his action "since prior to the filing of his Complaint." Leventhal Decl. ¶ 1. In light of that assertion, it is unclear why Mr. Leventhal waited until March 16, 2015—three and a half years after the complaint was filed—to enter his appearance. See Notice of Appearance by Jason Leventhal, Dkt. #40.

However, these excuses—even if fully credited—are ill-matched to the frequency and persistence of his Rule 16 violations. The phrase "too little, too late" is apt here: Mr. Nonnenmacher's excuses were unavailing, they were conveyed to the court belatedly, and they persisted notwithstanding multiple threats of sanctions.

Mr. Nonnenmacher has alluded in his papers to severe illness he allegedly suffered after learning that his mother's death was imminent. He has not specifically offered this alleged illness as an excuse for the aforementioned noncompliance with court orders in the pretrial phase. In fact, he specifically references having "<u>become</u> so severely ill" after he received that news, suggesting that the onset of his severe illness occurred in late March. Nonnenmacher Decl. ¶¶ 6-7 (emphasis added). However, even if the conditions from which Mr. Nonnenmacher claims he suffered afflicted him during the entire pretrial phase, they do not justify his noncompliance or make imposing a sanction against him unjust. <u>See</u> Fed. R. Civ. P. 16(f)(2).

If Mr. Nonnenmacher suffered from a physical or mental condition that impaired his ability to represent his client and comply with court orders, it was incumbent upon him to provide prompt and appropriate notification and, if necessary, to withdraw his representation. <u>See</u> Rule 1.16(b)(2) of the Rules of Professional Conduct of the New York State Unified Court System (requiring withdrawal where "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"). Mr. Nonnenmacher did not notify the court of any impairment in the pretrial phase, nor does his conduct suggest that he was unable to do so, especially given that he communicated with the court about other matters. <u>See generally</u> <u>Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co.</u>, 750 F.3d 1, 5 (1st Cir. 2014) (explaining in the context of a motion for Rule 60(b)(1) relief that an attorney's illness may qualify as an extraordinary circumstance but that the attorney must notify court of such illness

unless the illness suggests a "complete inability" to communicate with the court); Carcello v.

TJX Cos., Inc., 192 F.R.D. 61, 64 (D. Conn. 2000) (in the same context, holding that illness

alone is insufficient where attorney "failed to communicate with either opposing counsel or the

court to apprise them of the serious nature of his medical condition he now claims to be the

reason for his misfeasance").

 For all these reasons, this court finds that Mr. Leventhal and Mr. Nonnenmacher share

responsibility for the six violations of Rule 16 enumerated above. Federal court litigation in its

final pretrial stages is fast-paced and demanding. It requires discipline and rigor from the

attorneys and forceful management from the court. Were this court to accept the myriad excuses

proffered by Mr. Leventhal and Mr. Nonnenmacher for their repeated violations of court orders,

it would render Rule 16(f) practically meaningless. See generally Davila-Alvarez v. Escuela de

Medicina Universidad Cent. del Caribe, 257 F.3d 58, 65 (1st Cir. 2001) ("[A] lawyer's duty of

diligence transcends both upheaval at work and personal tragedy."). After careful consideration,

this court finds that these attorneys are jointly liable for violating Rule 16. Their excuses and

finger-pointing neither substantially justify their noncompliance nor make imposing a sanction

against them unjust. See Mahoney, 290 F.R.D. at 369.

 The sanctions this court may impose include, but are not limited to, those authorized by

Rule 37(b)(2)(A)(ii)–(vii). See Fed. R. Civ. P. 16(f)(1). Further, because this court has found that

sanctions are warranted under Rule 16(f), that rule compels this court to order Mr. Leventhal and

Mr. Nonnenmacher "to pay the reasonable expenses—including attorney's fees—incurred

because of any noncompliance with this rule." Fed. R. Civ. P. 16(f)(2).

 i. Fee award

 A fee award under Rule 16(f)(2) is tightly restricted. Although this provision authorizes

fee-shifting, it does not entitle the moving party to full compensation. Uretsky v. Acme Am. Repairs, No. 07-CV-4688, 2011 WL 1131326, at *1 (E.D.N.Y. Mar. 28, 2011) (citing Kiser v. Boeing Co., 163 F.R.D. 13, 15 (D. Kan. 1995)). Instead, "any fees awarded must be related to the expenses incurred as a result of the sanctioned misconduct." Id. (citing Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 666-67 (10th Cir. 1991); Stillman v. Edmund Sci. Co., 522 F.2d 798, 801 (4th Cir. 1975)). To recover attorney's fees under this provision, it is incumbent upon the defendants to specifically identify those fees and expenses incurred as a result of the violations found by the court. See Mahoney, 290 F.R.D. at 367.

If defendants claim any fees or expenses as a result of the specific violations enumerated above, they must submit a fee petition to Judge Orenstein, to whom I respectfully refer this matter. Defendants are cautioned that they may not seek or receive fees or expenses they spent in defending plaintiff's lawsuit generally. See Mahoney, 290 F.R.D. at 371-72 (refusing to award movant its total fees for the cost of litigation where movant, notwithstanding violations of court orders by adversary, was required to defend the lawsuit). Their application is limited to the incremental increase, if any, in expenses and fees arising from the particular aforementioned violations. Some of these violations, such as Mr. Nonnenmacher's failure to provide the court with his phone number, may not have caused any additional expenditure by defendants. Others, however, such as failure to prepare and furnish trial exhibits, may have required counsel for defendants to locate and compile the numerous exhibits plaintiff proposed in order to prepare objections, thereby multiplying the hours they expended on this matter. Similarly, any time that counsel for defendants spent writing to the court about how the aforementioned violations prevented them from meeting their obligations may be compensated, along with any time counsel for defendants spent participating in telephonic status conferences specifically

addressing those violations and resetting deadlines.

      ii.    Sanctions

This court must also determine whether any sanction in addition to the fee award should be imposed against Mr. Leventhal and Mr. Nonnenmacher. Many of the sanctions specified in Rule 37(b)(2)(A)(ii)-(vii), which are incorporated by Rule 16(f)(1), are inapplicable here because the underlying lawsuit was voluntarily dismissed. But Rule 16(f)(1) empowers this court to issue "any just orders," and public reprimands qualify as such. See Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 117-18 (2d Cir. 2009) (affirming the power of the district court to sanction attorneys on grounds including Rule 16(f) through issuance of reprimands).

This court finds that a public reprimand is an appropriate sanction for Mr. Leventhal and Mr. Nonnenmacher. In electing this sanction, this court regards the frequency and persistence of their violations as factors meriting public reprimand. These violations continued unabated even after the court explicitly threatened sanctions. In light of these circumstances, this court feels duty-bound to send a message that Mr. Leventhal and Mr. Nonnenmacher may not violate court orders with impunity and expect that clumsy post hoc rationalizations will excuse conduct that greatly prejudices their clients, their adversaries, and this court. The court sincerely hopes that the public reprimand it hereby issues will prompt Mr. Leventhal and Mr. Nonnenmacher to reflect on the harm they do to themselves, the legal profession, and the administration of justice when they engage in the conduct they have exhibited here.

    3.    Sanctions under 28 U.S.C. § 1927 and this court's inherent authority

This court declines to award sanctions against Mr. Leventhal under 28 U.S.C. § 1927 and this court's inherent authority. This court does not find both "that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith." Eisemann, 204

F.3d at 396. With respect to the second requirement, defendants have not shown that Mr. Leventhal was motivated by any improper purpose. There is little question that the effect of Mr. Leventhal's conduct (or, more precisely, his inaction) caused delay, but there is no evidence supporting a finding that he specifically intended that delay. Mr. Leventhal's recent conduct in this litigation may fairly be characterized as neglectful or apathetic, but it does not evince bad faith.

The same applies to Mr. Nonnenmacher. The difficulty in sanctioning him on these grounds lies in the finding demanded by the second requirement—one that requires a "high degree of specificity" by this court. <u>Dow Chem. Pacific Ltd.</u>, 782 F.2d at 344 (internal quotation marks and citations omitted). Unlike sanctions under Rule 16(f), sanctions under these provisions demand a careful and detailed finding that Mr. Nonnenmacher was motivated by some improper purpose. However, Mr. Nonnenmacher has clearly signaled to the court his intention to argue that, to the extent his actions were the product of conscious thought or behavior, they are better characterized as excusable neglect.

This court is disinclined to launch a public inquisition into the conditions Mr. Nonnenmacher suffered or suffers, the nature of those conditions, the events precipitating or exacerbating them, the precise moment of their onset, the mental state and mental capacity of Mr. Nonnenmacher during their pendency, and the actions taken by Mr. Nonnenmacher during their pendency that are fairly attributable to them. That is not to say these questions are unimportant. Instead, it reflects a judgment by this court that finding answers to those questions would multiply the burdens on this court's resources caused by Mr. Nonnenmacher's conduct to date—as well as a judgment that this task is be better suited to a different forum: the Committee on Grievances. This court is mindful that, in leaving those questions unanswered by this court

and instead referring them to the committee, this court is unable to make a finding that Mr. Nonnenmacher acted in bad faith so as to warrant sanctions under 28 U.S.C. § 1927 and this court's inherent authority. In this court's view, its decision falls well within its discretion with respect to sanctions on those grounds and serves the best interests of all parties involved. Accordingly, this court denies sanctions on those grounds against Mr. Nonnenmacher. Nothing in this court's opinion, however, is intended to in any way discourage the disciplinary committee from examining Mr. Nonnenmacher's conduct more closely and making a determination regarding whether he acted in bad faith.

**C.      Decision Without a Hearing**

Defendants have requested an evidentiary hearing in connection with the instant motion. Mr. Nonnenmacher has likewise signaled his desire for a hearing by referencing allegedly exculpatory evidence he seeks to introduce at one. See Nonnenmacher Decl. ¶ 7. Although this court originally anticipated conducting an evidentiary hearing in connection with the instant motion, it has determined that a hearing is unnecessary.

"Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (quoting In re Ames Dept. Stores, Inc., 76 F.3d 66, 70 (2d Cir. 1996)) (emphasis in original). An attorney facing sanctions "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." Id. at 97. In addition, that attorney "must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." Id.

These due process requirements have been satisfied. First, with respect to notice, Mr.

Nonnenmacher and Mr. Leventhal received thorough notice of the legal and factual bases of the sanctions sought against them. The instant motion devotes numerous pages to detailing the conduct alleged to be sanctionable, including not only the alleged misrepresentation with respect to Mr. Nonnenmacher's mother but also the violations of Rule 16 that undergird this court's imposition of sanctions. <u>See</u> Mem. in Supp. of Mot. for Sanctions, Dkt. #120, at 4-11. Defendants cite, for example, that "plaintiff repeatedly failed to timely submit his proposed trial exhibits to the Court" and that he "acknowledged that he had not adequately prepared as previously directed by the Court." <u>Id.</u> at 10. Defendants also describe the numerous extensions sought by plaintiff's counsel and the excuses they made in doing so. <u>Id.</u> at 4-6, 9-10. Additionally, defendants cite the specific legal grounds on which they seek sanctions. <u>Id.</u> at 1, 7-8. There can be no doubt that Mr. Nonnenmacher and Mr. Leventhal were on notice. The same, of course, applies to plaintiff, against whom this court does not impose sanctions.

Second, with respect to an opportunity to be heard, Mr. Nonnenmacher and Mr. Leventhal were given ample opportunity to defend themselves against sanctions. Even after Mr. Nonnenmacher failed to timely oppose the instant motion, and failed to respond to an order to show cause regarding the same, the court gave Mr. Nonnenmacher an opportunity to secure counsel and submit his opposition. The court even granted an extension of deadlines to which Mr. Nonnenmacher had agreed in order to give him full opportunity to do so. Although the court afforded Mr. Nonnenmacher his opportunity to be heard, he chose to submit only a declaration— without any legal argument—to defend against the instant motion. <u>See</u> Nonnenmacher Decl. His decisions in formulating the opposition he submitted do not render his opportunity to be heard insufficient.

Nor is Mr. Nonnenmacher entitled to an evidentiary hearing. His declaration indicates

that he "intend[s] to document [his severe medical problems] at the upcoming hearing." See Nonnenmacher Decl. ¶ 7. Under the law of this circuit, "the opportunity to be heard does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing." Schlaifer, 194 F.3d at 335 (collecting cases). This is especially so when the sanctioning court's decision is "based on well-known facts contained in the existing record." Id.

Mr. Nonnenmacher originally stated that the records he seeks to introduce are relevant not to the merits of his defense but "solely to satisfy what Mr. Nonnenmacher believes to be his obligation of candor to the Court." Am. Mot. for Leave to Electronically File Doc. Under Seal, Dkt. #134, at 3. As this court has already held, however, it does not require the records for that purpose. See Order dated Apr. 19, 2016, Dkt. #139, at 2-4. At oral argument, his lawyer clarified that the records may also be relevant to this court's determination of what transpired during the telephone conversation between Mr. Nonnenmacher and Mr. Leventhal on March 21 that resulted in Mr. Leventhal's report to the court that Mr. Nonnenmacher's mother had died. Tr. of May 5, 2016 Oral Arg. at 9. However, the records have no impact on this court's order regardless of which reason supports their introduction. This court assumes arguendo that Mr. Nonnenmacher suffered from the conditions he claims, leaves to the disciplinary committee the question of whether he intentionally misrepresented his mother's death, and faults him only for failing to provide any notification of his claimed conditions to the court given the absence of evidence that he was unable to do so. This court therefore declines to hold an evidentiary hearing.

In the context of sanctions, "the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard." Id. at 335. However, the favored approach in this circuit is to permit oral argument when an evidentiary hearing is unnecessary. Id. at 336 ("although

45

granting a hearing for oral argument would generally be the better practice, we cannot say that under the circumstances before us, the denial of a hearing was a denial of an opportunity to be heard"). Accordingly, out of an abundance of caution for the due process rights of Mr. Nonnenmacher and Mr. Leventhal, this court held oral argument on May 5, 2016, and gave each party to the instant motion an opportunity to be heard. The court expressly advised the parties in advance of oral argument that it would not necessarily hold an evidentiary hearing in addition and instructed them to "advance all arguments in support of their positions" at oral argument. See Scheduling Order dated Apr. 29, 2016. Under these circumstances, the requirements of due process were fully satisfied.

**D.     Referral to the Committee on Grievances[14]**

This court hereby refers this matter to the Chief Judge for referral to the Committee on Grievances to consider the imposition of discipline or other relief pursuant to Local Civ. R. 1.5(f).

With respect to Mr. Leventhal, this court asks that committee to consider, inter alia, whether Mr. Leventhal's conduct in this litigation was competent and diligent within the meaning of Rules 1.1 and 1.3 of the Rules of Professional Conduct of the New York State Unified Court System. Of particular concern to this court is an issue it raises sua sponte regarding the voluntary dismissal of plaintiff's suit. In conjunction with its opposition to the instant motion, plaintiff submitted—at this court's order—an ex parte submission for in camera inspection. As this court has explained elsewhere, the majority of plaintiff's submission is protected by attorney-client privilege and therefore not considered by this court as part of its

---

[14] This court has also forwarded its opinion and order to the Grievance Committee of the Second Judicial Department of the Appellate Division, where both Mr. Leventhal and Mr. Nonnenmacher are admitted, so that it may consider the imposition of discipline or other relief as appropriate.

ruling. The court agrees with plaintiff's claim that the motivation for his voluntary dismissal is protected. However, there is a portion of the submission that is not protected by attorney-client privilege. It is an assertion by plaintiff that Mr. Leventhal dismissed this case without plaintiff's express authorization.

Plaintiff has not argued for reinstatement of his action on that basis. Nor has plaintiff argued that he was prejudiced by Mr. Leventhal's unauthorized dismissal. But regardless of the consequences of Mr. Leventhal's actions, plaintiff's assertion—if true—raises serious concerns regarding whether Mr. Leventhal acted in a manner consistent with Rules 1.2 and 1.16 of the Rules of Professional Conduct of the New York State Unified Court System. This court respectfully requests that the committee give this issue its attention.

This court also urges the committee to examine Mr. Leventhal's failure to identify the conflict or potential for conflict in representing plaintiff in the context of this motion. See Healey v. Chelsea Res., Ltd., 947 F.2d 611, 623 (2d Cir. 1991) ("A potential for conflict is inherent in a sanctions motion that is directed against both a client and a lawyer, even when, as here, the two agree that an action was fully warranted," meaning that "an attorney who continues to represent a client despite the inherent conflict of interest in his so doing also risks an ethical violation"). Mr. Leventhal acknowledged his obligation to consider the potential for conflict but conceded that he "ha[d]n't thought about it." Tr. of Apr. 7, 2016 Status Conference at 1, 3.

With respect to Mr. Nonnenmacher, this court urges that committee to consider, inter alia, Mr. Nonnenmacher's compliance with Rule 1.16(b)(2) of the Rules of Professional Conduct of the New York State Unified Court System, which requires an attorney to withdraw from the representation of a client when "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." An additional consideration is Mr. Nonnenmacher's

failure to promptly advise the court of any such condition impairing his representation of plaintiff. Mr. Nonnenmacher did not notify the court of his alleged conditions until three and a half weeks after their purported onset. He claimed that his limited access to phone and email caused this delay, yet it is evident from the record that Mr. Nonnenmacher nonetheless managed to communicate with others—including his spurned co-counsel and an associate at a firm where he no longer worked—well before he communicated with the court.

The court also urges that the committee consider whether Mr. Nonnenmacher's conduct in this court has been competent and diligent within the meaning of Rules 1.1 and 1.3 of the Rules of Professional Conduct of the New York State Unified Court System. In addition to the conduct he has exhibited in this litigation, the court is aware of other cases in this district alone where Mr. Nonnenmacher has violated court orders, proffered conspicuously similar excuses for doing so, suffered sanctions, and failed to comply with those sanctions. Calletti v. Qianyu, No. 14-CV-5358 (E.D.N.Y. 2014) is illustrative, as is Diaz v. City of New York, No. 12-CV-1066 (E.D.N.Y. 2012). This recurrent behavior calls into question the veracity of various representations Mr. Nonnenmacher made to the court in seeking extensions or adjournments, which this court likewise urges the committee to examine more closely.

## CONCLUSION

For the foregoing reasons, this court grants in part and denies in part defendants' motion for attorney's fees and sanctions. Mr. Leventhal and Mr. Nonnenmacher are hereby sanctioned in the form of a public reprimand, and their conduct is referred to the Chief Judge for referral to the Committee on Grievances. The calculation of reasonable expenses, including fees, owed to defendants, subject to the limitations set forth above, is respectfully referred to Judge Orenstein.

SO ORDERED.

s/_____
Allyne R. Ross
United States District Judge

Dated:          May 9, 2016
                Brooklyn, New York